Dumas *v.* Owen.

4-7950                                    196 S. W. 2d 987

Opinion delivered October 21, 1946.

Rehearing denied November 18, 1946.

*A. A. Thomason, W. H. Kitchens, Jr., Wade Kitchens* and *Melvin Chambers,* for appellant.

*Garner & Clegg,* for appellee.

Smith, J.   This is the fourth appearance of this case in this court. Opinions on former appeals are *Owen v. Dumas,* 200 Ark. 601, 140 S. W. 2d 101; *Dumas v. Smith, Chancellor,* 201 Ark. 1057, 147 S. W. 2d 1013, and *Dumas v. Owen,* 205 Ark. 777, 171 S. W. 2d 294. We will not review these decisions except in so far as they are important to the decision of the question raised on this appeal.

The relevant points decided on those appeals were as follows: E. L. Owen owned, at the time of his death in 1912, 240 acres of land, and was survived by his widow

and ten children. W. E., one of these children, claimed to have acquired title to all the lands owned by his father, at the time of his death, under deeds from his mother, his insistence being that the will of his father empowered his mother to execute these deeds. We held on the first appeal that the will had not conferred the power to execute these deeds, and that they were ineffective to convey the title. The primary purpose of the will, as appears from the opinion on the first appeal was to support testator's widow after his death, and while we held that W. E. Owen had not acquired title to the land, we did hold that he had a valid claim against the estate to be reimbursed for contributions made to his mother for her support, and was entitled also to be reimbursed for the discharge of certain liens against the lands, and the decree was remanded with directions to state an account. It was sought to prohibit that proceeding in the case reported in 205 Ark. *supra,* where that relief was denied.

The account was stated and the decree approving it was affirmed October 26, 1943. See 205 Ark. 777, *supra.* The decree there affirmed, which was rendered June 22, 1942, recited, "that the plaintiff is entitled to have and recover of and from the following described land to-wit: southeast quarter of section 18, and the west half, southwest quarter of section 17, all in township 18 south, range 20 west, being the property of the estate of E. L. Owen, deceased, the sum of $2,635.12, with six per cent. interest thereon from the 19th day of April, 1942, until paid. That said sum is declared to be a lien upon said land to secure the payment thereof, which lien is now and forever established and fixed, provided, however, that the defendants or either of them, or any one of them, may redeem from said lien and discharge same by the payment of said amount, together with interest and any costs of this proceeding which might be due the plaintiff herein." It was ordered that the foreclosure of this lien shall be postponed during the life of the widow of E. L. Owen. The right there given to pay this debt and discharge the lien was never exercised. Had it been the litigation might have ended.

On August 5, 1945, the widow of E. L. Owen, the testator, and certain of his heirs, executed a mineral deed to Henry Stevens, trustee, conveying to Stevens an undivided 9/20ths interest in the oil and gas in and under the southeast quarter of section 18, and the west half of the southwest quarter of section 19. The purpose of this trust was not stated, but was for the evident purpose of defending litigation prosecuted by W. E. Owen in regard to the land.

Subsequently, on a date not stated, W. E. Owen filed a petition for an order to sell the above described lands in satisfaction of the decree which had awarded him judgment for $2,635.12, in which he alleged the death of his mother, and that no part of the decree had been satisfied.

On a date not stated, a response to this motion and petition was filed, which recited the previous history of this litigation. It was alleged that on July 21, 1937, the widow and the heirs of E. L. Owen executed to W. E. Owen a mineral deed covering all the land, that this deed was procured through the false and fraudulent representation that it was required to negotiate and sell an advantageous oil and gas lease which was to be executed for the purpose of satisfying the lien of W. E. Owen against the land, and of providing for the support of Mrs. E. L. Owen, their mother, and that there was no other consideration for the deed, that after receiving this deed, W. E. Owen made no effort to lease the land as had been agreed he would do, but instead brought suit to quiet title under the deeds he had obtained from his mother, which were canceled under the opinion in the first appeal. It was further alleged that this deed to W. E. Owen, dated July 21, 1937, was not filed for record until June 29, 1939, and since being placed of record has so clouded the title that Mrs. Owen, the widow, could make no lease or other disposition of the land as the will of her husband authorized her to do. She and the heirs who joined in the response to W. E. Owen's petition for an order of sale, prayed that the deed to W. E. Owen be canceled as having been obtained by fraudulent

representation, and without any consideration except these fraudulent representations.

These respondents further alleged that in May, 1940, they had obtained a purchaser for a lease, which they could not consummate without the consent of W. E. Owen, which he refused to give.

This petition for an order to sell in satisfaction of the judgment in favor of W. E. Owen, and the response thereto, apparently raised all the issues which were raised in the subsequent proceedings, some of which will presently be discussed.

The prayer for an order of sale was granted, and in the decree ordering this sale, rendered May 22, 1944, it was ordered that unless the judgment was paid within forty days from the date of the decree, the land should be sold by a commissioner appointed to make the sale on July 27, 1944. There is no ambiguity in this decree as to the interest in the land ordered sold.

The decree reads: "That upon the sale of said property as aforesaid, and the confirmation thereof by the court, all the right, title and equity of redemption of the defendants (and all the heirs and their wives are named) in and to said property, and any part thereof, shall be and the same is hereby adjudged from that date to be foreclosed and forever barred thereafter."

In the response filed by Stevens, it was alleged that the said W. E. Owen, after obtaining this conveyance dated July 21, 1937, not only refused to execute an oil and gas lease, but refused and prevented them from doing so, that they did in fact negotiate a lease conveying 17/20th of the mineral interest for a consideration of $4,600 to a purchaser ready and willing and able to pay that sum for the lease, but that they were unable to consummate the sale for the reason that the deed to W. E. Owen constituted a cloud on the title which he declined to remove, and he declined also to join in the execution of the lease which they had negotiated. It was prayed in this response that the deed to W. E. Owen, dated July 21, 1937, be canceled, and that the judgment in W. E. Owen's favor be reduced by crediting thereon

certain expenses incurred by other heirs of E. L. Owen in the support of their mother. Notwithstanding this response, the court made the order for the sale of the property set out above.

The sale was had on the day and upon the terms provided in the decree of sale, and there can be no question, but that if some person, not a party to the litigation, had been the purchaser, he would have acquired, after the confirmation of the sale, the entire title to the 240-acre tract, including the oil and gas.

The commissioner appointed to make the sale made it, and filed his report showing a sale to W. E. Owen for the consideration of $12,500, and in due course this report of sale was approved, as was also the deed from the commissioner to W. E. Owen. This deed recited the conveyance to Owen of the entire interest of all the heirs of E. L. Owen, and all other parties to the suit, conveying "all and singular the rights, privileges, hereditaments and appurtenances thereunto belonging, or in anywise appertaining." These proceedings were had in the case styled *W. E. Owen* v. *Emma Dumas, et al.,* No. 5641, which was the number and style of the case reported in 200 Ark., *supra.*

This was apparently the end of that litigation as no appeal was prayed or taken from any of the orders and decrees set out above. When the response to the petition for the order of sale was filed, there was filed also a *lis pendens* notice advising and warning that respondents were praying the cancellation of the deed to W. E. Owen from the widow and heirs of E. L. Owen, dated July 21, 1937.

The commissioner's deed to Owen was dated September 25, 1944, and was filed for record that day. On September 23, 1944, before the time for an appeal from the order confirming the sale or the decree of sale had expired, a new suit was filed by Stevens, trustee, styled *Henry Stevens, Trustee, plaintiff,* v. *W. E. Owens, et al., defendants.* This suit was given a new number, to-wit: 6423. The prayer of this complaint reads as follows: "Whereas plaintiff prays that he be declared the owner

in fee of a undivided 9/20ths of the oil and gas and other minerals of said land, that his title thereto as against the defendants be forever quieted and confirmed, and the mineral deed from defendant, dated July 21, 1937, as to plaintiff's mineral interests be declared null and void, and a cloud upon his title and that the same was executed without authority under the will of W. E. Owen, and that in every event the same be subordinated to the interests of plaintiff and that defendants be estopped to claim adversely to plaintiff's interest."

This complaint filed by Stevens is a very voluminous instrument and recited in detail the preceding litigation. It alleges that before the bidding at the commissioner's sale began, W. E. Owen caused his attorney to announce publicly to the bidders in the course of the bidding, that Owen owned all the oil and gas and other minerals in the land being sold, and that but for this announcement a bid of from twenty to twenty-five thousand dollars would have been made.

The deposition of one Shep Beene was taken on interrogatories, which does not appear to have been crossed by W. E. Owen. The witness stated that he attended the sale for the purpose of bidding and that in his opinion the mineral rights were worth from fifty to sixty dollars per acre, and that he would have bid that amount but for the announcement that the mineral rights were not being sold. As the bidding progressed he said to the attorney who made the announcement, "We are getting the surface and timber pretty high, are we not?"

Other heirs, some owning interests not represented by Stevens filed an intervention adopting the allegations of Stevens' complaint and joined in the prayer for the relief prayed by him. A motion was sustained to dismiss this intervention, and this appeal is from that decree.

It is argued that this intervention raised issues which had been adjudicated with one exception, presently to be discussed, and this appears to be true.

It may be true that the deed to W. E. Owen from the widow and heirs constituted him a trustee for the benefit of himself and his mother and the other heirs, and

that he proved unfaithful to his trust, in that he refused to execute the lease which the deed to him contemplated he would do, and that he should at least have permitted the heirs to execute the oil and gas lease which they had negotiated. It may also be true that it was error to order the sale in satisfaction of the debt due W. E. Owen under the facts stated. But these issues were all raised in the pleadings praying and resisting the order of sale to satisfy the lien, yet a decree was rendered ordering the sale, from which no appeal was taken. The sale was reported, and no exceptions thereto were filed and it appears to have been confirmed and the commissioner was ordered to execute to W. E. Owen, as purchaser, a deed to the land sold, all of it, and all interests therein. No appeal was prosecuted. On the contrary, within the time when an appeal might have been taken, Stevens, as trustee, filed a new suit under a new number, in which he sought to litigate the questions raised in the pleadings before the court when the decree fixing the date for the sale was rendered. There must be an end to litigation and there was an end to this litigation when no appeal was taken from the decree fixing the date for the sale of the land in satisfaction of the debt due W. E. Owen and the subsequent proceedings under that order. The only new question raised in the intervention, from the dismissal of which is this appeal, is that Owen's attorney stated at the sale that the mineral rights were not being sold. It would have been a valid objection to the confirmation of the commissioner's report of the sale to have shown that Owen had stifled the bidding, but no such objection to the confirmation of the report of the sale was made. It was not shown when interveners became aware of this fact, if it occurred. But it was alleged to be true in the complaint in the case No. 6423 which Stevens filed September 23, 1944, which was two days prior to the date on which the court approved the commissioner's deed.

Nor does it appear that the bidding was in fact stifled to any great extent by W. E. Owen. He bid, and, when his note given at the sale matured, paid the commissioner the amount of his bid and note, to-wit: the sum of $12,500. It was not shown that the land possessed any

great value aside from the mineral rights. The heirs complained that they had not been permitted to consummate a lease which they themselves had negotiated for 17/20ths of the mineral rights for a consideration of $4,600.

It is true Beene testified that he would have bid as much as fifty to sixty dollars per acre, but for the announcement that the mineral rights were not being sold. This would have been from twelve to fourteen thousand four hundred dollars. Evidently others did bid, otherwise Owen might have bought the land for the amount of his judgment. But whatever the truth on this new issue may be, the fact remains that this objection to the confirmation of the sale was not made when it might and should have been.

The confirmation of the decree and report of sale is conclusive of any issue which might and should have been raised in opposition to the confirmation, and all the issues now sought to be raised could then have been raised and we must give conclusive effect to these confirmation orders. See *Jones* v. *National Bank of Commerce of El Dorado*, 207 Ark. 613, 182 S. W. 2d 377, and cases there cited. It follows that the decree from which is this appeal must be affirmed, and it is so ordered.