STATE, USE MILLER COUNTY *v.* EASON.

4-9524                                    240 S. W. 2d 36

Opinion delivered June 11, 1951.

G. L. Lookadoo, Thomas E. Webber and Van Johnson, for appellant.

Smith & Sanderson and Shaver, Stewart & Jones, for appellee.

Ed. F. McFaddin, Justice. This is a civil suit brought by a taxpayer, seeking to recover a Chevrolet truck alleged to be the property of Miller County, Arkansas. The suit was instituted and prosecuted, pursuant to the provisions of Act 193 of 1945, now found in § 17-304, et seq., Ark. Stats.

Hon. Elmer Freeman was County Judge of Miller County for the four year period ending December 31, 1950. The appellee, I. C. Eason, was a Road Supervisor in the employ of Miller County, and had control of, and drove, the 1949 Chevrolet pickup truck here involved. In September, 1950, Judge Freeman orally ordered a new GMC truck from the Hughes Motor Company of Texarkana, with the understanding that the County would trade in the Chevrolet truck for $510 as part payment on the new GMC truck. Shortly before, or contemporaneous with the making of the contract with the Hughes Motor Company, Judge Freeman orally requested the Miller County Tax Assessor to appraise the 1949 Chevrolet truck; and the Tax Assessor gave Judge Freeman a letter, dated September 7, 1950, and reading:

"Miller County Road Dept.

"Miller County Courthouse

"Texarkana, Arkansas

"Sirs:

"On the 1949 Chevrolet ½ ton pickup, motor no. GBA 857597, I wish to submit my appraisal of $475.00.

"The appraised value of the property, described above, is given in accordance of Section 4, Act 193 of Acts of Arkansas 1945.

"Yours truly,

"/s/ L. B. Greer."

Judge Freeman also orally requested the Cargile Motor Company of Texarkana to state the value of the Chevrolet truck; and that company, under date of September 6, 1950, wrote the following letter:

"Miller County Roads

"Texarkana

"Arkansas

"Gentlemen:

"We have inspected the 1949 Chevrolet ½ ton pickup, motor no. GBA 857597, and wish to submit an offer on this truck of $500.00 either on the purchase of a new truck or an outright sale.

"Yours very truly,

"CARGILE MOTOR COMPANY."

There was no entry of any kind made in any of the records of the Miller County Court concerning any of the foregoing; and the term of the Court lapsed and a new term commenced in October, 1950.[1] Then, on December 4, 1950, Hughes Motor Company delivered to Judge Freeman the new GMC truck, accepted the Chevrolet truck as a trade-in, and filed a claim with Miller

---

[1] The terms of the County Court are fixed by § 22-603, Ark. Stats., to be the first Monday in January, April, July and October of each year.

County, Arkansas, which, omitting affidavit, reads entirely as follows:

"December 4, 1950

"COUNTY OF MILLER

"To: Hughes Motor Company DR.

"New GMC Truck, Model FC302,
"Serial No. 44900. Motor No.
"C248121716 ............................................................ 2,493.00
"Less allowance for 1949
"Chevrolet Truck ................................................ 510.00

"New Difference ................................................ 1,983.00

Appellee, I. C. Eason, in his capacity as Road Supervisor of Miller County, drove the Chevrolet truck to the Hughes Motor Company and surrendered possession of it. Then, on the same trip, I. C. Eason purchased the Chevrolet truck from Hughes Motor Company for $510 as his own property; and thereafter Miller County, Arkansas, spent $104.09 repairing the Chevrolet truck, because it was testified that the County Judge had agreed that the truck would be kept in good condition from September 6th until the delivery of the new GMC truck. On December 20, 1950, Judge Freeman allowed the claim of Hughes Motor Company for $1,983; and a warrant on the County Highway fund was drawn in payment of the claim.

Judge Freeman went out of office as County Judge on December 31, 1950; and Jewel Evers became County Judge[2] on January 1, 1951; and, as a citizen and taxpayer, instituted this suit on January 12, 1951, to recover for Miller County the Chevrolet truck then in the possession of I. C. Eason. The Hughes Motor Company

[2] The Chancellor, in his opinion, stated: "The evidence shows that Jewel Evers is an individual and taxpayer of Miller County, Arkansas, and whether the evidence shows it or not, the Court takes judicial knowledge of the fact that he is also the present County Judge of Miller County, having succeeded Judge Elmer Freeman on January 1st, 1951. In that connection, Judge Evers is to be complimented for his diligence in attempting to round-up property of Miller County, Arkansas. All transactions involving the property of the public should be inquired into carefully, regardless of when they were made."

intervened, and defended the title and possession of Eason. The Chancery Court held:

"... that Act 193 of the Acts of the General Assembly of the State of Arkansas for the Year 1945 is applicable to the facts in this cause; that said Act has been substantially complied with in the transaction involved in this case; and that the complaint of the plaintiffs should be dismissed for want of equity."

This appeal challenges the Chancery holding and decree.

Prior to Act 193 of 1945, the law regarding the disposition of county property had been summarized by this Court in *Little Rock Chamber of Commerce* v. *Pulaski County*, 113 Ark. 439, 168 S. W. 848:

"... the control and management of all county property is placed in the county court, and authority is conferred on that court 'to sell and cause to be conveyed any real estate or personal property belonging to the county'."

To the same effect see *State* v. *Baxter*, 50 Ark. 447, 8 S. W. 188; *Ivy* v. *Edwards*, 174 Ark. 1167, 298 S. W. 1006; and *Washington County* v. *Lynn Shelton Post*, 201 Ark. 301, 144 S. W. 2d 20. The 1945 Legislature adopted Act 193, captioned, "An Act to Prescribe the Manner in Which County Property May Be Sold and Conveyed".[3] The Act is now § 17-304, *et seq.*, Ark. Stats.; and by the said Act the Legislature prescribed definite and essential procedure to be followed when County property was to be conveyed. Since this is the first time this Act has been involved in litigation reaching this Court, we summarize the Act, insofar as concerns the issues in this case:

Section 1: "The county court . . . shall have power . . . to sell . . . any . . . property belonging to the county . . . by proceeding in the manner set forth in this Act."

---

[3] In 20 C. J. S. 1004, cases from various jurisdictions are cited to sustain this text: "The legislature may prescribe the manner in which county property may be sold, and such prescription must be complied with; . . ."

Section 2: ''Whenever the county judge . . . shall consider it advisable . . . to sell . . . any . . . property belonging to the county, he shall cause an order to be made in the county court, setting forth (a) a description of the property to be sold, (b) the reason for such sale and (c), directing the county assessor to cause such property to be appraised at its fair market value and to certify his appraisal thereof to the county court within a time to be specified in the order. A certified copy of such order shall be delivered to the county assessor by the county clerk and the county clerk shall certify the date of the delivery . . . on the margin of the record where such order is recorded.''

Section 3: ''. . . the county assessor shall view the property . . . and shall cause the same to be appraised at its fair market value. The assessor shall, within the time specified in the order, file with the county clerk his written certificate of appraisal . . .''

Section 4: ''If the appraised value of the property . . . is less than $500, such property may . . . be sold . . . by the county judge, either at public or private sale, for not less than three-fourths of the appraised value. . . . When such sale has been completed, the county court shall enter its order approving such sale, and such order shall set forth (a) the description of the property sold, (b) the name of the purchaser, (c) the terms of such sale . . .''

Section 5: ''If the appraised value of property . . . exceeds . . . $500, the County Judge may sell such property to the highest and best bidder upon sealed bids,'' by following certain procedure and also subject to the Approval Board.

Section 6 provides that any conveyance of county property, not made pursuant to this Act, shall be void; and also authorizes a taxpayer's suit, such as this one. The entire section will be copied in a subsequent portion of this opinion.

I. *Substantial Compliance.* Some of the omissions that show absence of *literal* compliance with Act 193 of

1945 are: (a) no order was entered in the records of the County Court, as provided by § 2 of the Act; (b) the County Clerk was never given any order to deliver to the Assessor; (c) the Assessor did not file with the County Clerk his written certificate of appraisal, as provided by section 3; and (d) there was no order entered in the records of the County Court approving the sale of the property or containing any of the essentials stated in section 4. In short, literal compliance is wholly absent. The Chancery Court held, as previously quoted, "that said Act (193 of 1945) has been substantially complied with in the transaction involved in this case". Assuming, without deciding, that substantial, rather than literal compliance, is all that is required under Act 193 of 1945, we consider whether what was done in this case is sufficient to constitute substantial compliance.

The record shows these things to have been done: (a) Judge Freeman orally requested the Tax Assessor to appraise the Chevrolet truck; (b) the Tax Assessor wrote a letter stating his appraisal, saying that it was given in accordance with § 4[4] of the act 193; and (c) Judge Freeman received and kept the letter. Were these listed acts sufficient to constitute "substantial compliance" with the Act? In *Kasner* v. *Stanmire*, 155 Pac. 2nd 230, Justice WELCH of the Supreme Court of Oklahoma, said:

"We conceive it to be the law that substantial compliance with a statute is not shown unless it is made to appear that the purpose of the statute is shown to have been served."

From the summary previously made, it is apparent that one of the clear purposes of the Act 193 was *to make public all dispositions* a county might make of its property. An order requiring appraisal was to be entered in the county records as the first step in any disposition. Nearly every County official was brought in as an actor in the disposition of County property: the County Judge entered the order, and delivered a copy to the County

---

[4] As a matter of fact, it was an attempted compliance with § 3 of the Act.

Clerk, who delivered a copy to the County Assessor, who redelivered the appraisal to the County Clerk. Then, if the property was appraised at more than $500, the Sheriff, the Treasurer and the Circuit Clerk became a Board of Approval. It is apparent (a) that the law-makers intended that the County Judge would have to inform more persons than the County Tax Assessor; and (b) that orders would have to be entered so that any taxpayer might easily be informed. The entry of the orders is far more important than the mere writing of a letter by the Tax Assessor. The entire matter of the disposition of the Chevrolet truck, insofar as the County Court records are concerned, rested within the knowledge of the County *Judge*, who is not the County *Court*. See *Rebsamen* v. *Van Buren County*, 177 Ark. 268, 6 S. W. 2d 288; and *Lyons Machinery Co.* v. *Pike County*, 192 Ark. 531, 93 S. W. 2d 130. There was no entry of any order in the records of the County Court at any time during the entire term of Judge Freeman, except merely the allowance of $1,983 claim which is to be subsequently discussed.

We therefore reach the conclusion that there were not sufficient matters done in this case to constitute *substantial compliance* with Act 193 of 1945; and that the learned Chancery Court erred in finding that there had been substantial compliance.

II. *Ratification.* Appellee insists that when the Hughes Motor Company's claim for $1,983 was allowed by the County Court on December 20, 1950, such allowance constituted a ratification by the County Court of the conveyance of the Chevrolet pickup truck to the Hughes Motor Company, since the claim, as previously copied, contained these words:

"Less allowance for 1949
"Chevrolet Truck ........................................................ 510.00."

To support this argument on ratification, appellee cites and relies on *Greenberg Iron Co.* v. *Dixon*, 127 Ark. 470, 192 S. W. 379; *Woodruff County* v. *Road Imp. Dist.*, 159 Ark. 374, 252 S. W. 930; *Watson & Smith* v. *Union*

*County,* 193 Ark. 559, 101 S. W. 2d 791; and *Watts & Sanders* v. *Myatt,* 216 Ark. 660, 226 S. W. 2d 800. The rationale of the holdings in these cases is summarized in the following language in *Watts* v. *Myatt (supra):*

"A county contract ineffectual because màde only by the County Judge in his executive capacity may be bindingly ratified by subsequent approval by the County Court. *Leathem & Co.* v. *Jackson County,* 122 Ark. 114, 182 S. W. 570, Ann. Cas. 1917D, 438. Such ratification may be by allowance of a claim for payment under the contract. *Wilcox* v. *McCallister,* 186 Ark. 901, 56 S. W. 2d 765; *Watson and Smith* v. *Union County,* 193 Ark. 559, 101 S. W. 2d 791. That was what happened on Dec. 7, 1948, in the present case. As of that date the contract was ratified."

We recognize the above quoted holding; and nothing herein changes the law as applied in the cited cases. Each of them was a case in which nothing more was required of the County Court in authorizing the contract, in the first instance, than was done by the County Court in the order allowing the claim. In other words, the act of ratification was of equal dignity and formality with what would have been required for the original act of authorization.[5] But in the case at bar the Legislature, by Act No. 193 of 1945, has prescribed certain essentials and formalities to be followed by the County Court in the disposition of county property; and the same essentials and formalities must necessarily be observed in the act of ratification, as were required to make valid the original act of authorization.

In *McCracken* v. *City of San Francisco,* 16 Cal. 591 (1. c. 623), Chief Justice FIELD of the Supreme Court of California (later Mr. Justice FIELD of the United States Supreme Court) stated the applicable rule:

"To determine the effect of these acts, as a ratification of the sale, it is necessary to consider the conditions essential to a valid ratification. To ratify, is to give

---

[5] In *Scott County* v. *Advance Co.,* 288 Fed. 739, 36 A. L. R. 937, the Circuit Court of Appeals discussed some limits on ratification by Arkansas Counties.

validity to the act of another. A ratification is equivalent to a previous authority. It operates upon the act ratified in the same manner as though the authority had been originally given. *It follows, as a consequence, that where the authority can originally be conferred only in a particular form or mode, the ratification must follow the same form or mode.* Thus, if an authority to execute a deed of a private person must be under seal, the ratification of the deed must be also under seal; and where an authority to do any particular act on the part of a corporation can only be conferred by ordinance, a ratification of such act can only be by ordinance." (Italics our own.)

In McQuillan on "Municipal Corporations", 3rd Ed., § 29.106, the holdings are summarized in this language:

"The ratification must be by the officer or body originally empowered to make the contract, and in the case of executory contracts in the mode and form required by law in the first instance, since ratification is equivalent to previous authorization and operates upon the act ratified in the same manner as though authority had been given originally. In other words, where contracts of a municipality are required to be made in a specified manner, and where an express contract is necessary, an invalid contract can be ratified only by an observance of the same formalities and provisions necessary to be complied with in the making of a valid contract."

The above quoted statements are applicable in the case at bar, because a county is in many respects likened to a municipal corporation. In *Eagle* v. *Beard,* 33 Ark. 497, Mr. Justice EAKIN quoted from *Laramie County* v. *Albany County,* 2 Otto. (92 U. S.) 307, 23 L. Ed. 552:

" 'Counties, cities and towns, . . . are municipal corporations, created by the authority of the Legislature; and they derive all their powers from the source of their creation, except where the Constitution of the State otherwise provides.[6] . . .' "

---

[6] The same quotation is to be found in *City of Hot Springs* v. *Gray,* 215 Ark. 243, 219 S. W. 2d 930.

Furthermore, the County Judge—when he acts independently of the County Court—is acting as an agent of the County; and the general rule in agency matters is that the same essentials are required for ratification as are required to constitute original authorization. In 2 C. J. 485, and again in 2 C. J. S. 1088, the holdings are summarized:

"Accordingly the general rule is that whatever form of authorization would have been sufficient to clothe the agent with original authority to do an act will be sufficient to constitute a ratification of such act when done without previous authority; *and conversely that wherever the law requires a particular mode of authorization there can be no valid ratification except in the same manner.*" (Italics our own.)

Act 193 of 1945 prescribed certain preliminary essentials to be observed by the County Court before the County Judge could act as an agent of the county in making a valid disposition of the county property, even when it was appraised at less than $500. Among these essentials, we mention again: section 2 required the entry of an order in the County Court records setting forth the description of the property to be appraised, and also required that the certificate of the County Clerk be made "on the margin of the record where such order is recorded". Section 4 of the Act required that after the sale was completed "the county court shall enter its order approving such sale" and describing the property sold. So the Act required the entry of two orders in the County Court, each describing the property sold. We hold that the mere entry of an order allowing a claim against the County for the purchase of the new GMC truck, with a credit allowed for the surrender of the Chevrolet pickup truck—as was done in this case—was not an act of equal essentials and formalities with the requirements of Act 193 of 1945. In short, the ratification did not contain the essentials that were required to make the original authorization valid; and so the attempted ratification lacked sufficiency.

III. *Estoppel.* Finally, appellee says:

"By accepting, keeping and using the GMC dump truck, the county is estopped to deny the validity of its transaction with Hughes, an integral part whereof was the allowance of the trade-in value of the county's truck. It is estopped 'so far as the formality required by law is concerned.'"

To support his argument on estoppel, appellee cites and discusses these cases: *Howard County* v. *Lambright,* 72 Ark. 330, 80 S. W. 148; *Forrest City* v. *Orgill,* 87 Ark. 389, 112 S. W. 891; *International Harvester Co.* v. *Searcy County,* 136 Ark. 209, 206 S. W. 312; *Fort Smith* v. *U. S. Rubber Co.,* 184 Ark. 588, 42 S. W. 2d 1004; and *Yaffe* v. *Pulaski County,* 188 Ark. 808, 67 S. W. 2d 1017.

We find no merit in appellee's contention on estoppel. This is a proceeding instituted by a taxpayer for the benefit of the County, and § 6 of the Act 193 of 1945 says:

"Any sale or conveyance of real or personal property belonging to any county not made pursuant to the terms of this act shall be null and void and any taxpayer of the county may within two years from the date such sale is consummated bring an action in the Chancery Court of the County in which the sale is made or in any county where personal property so sold may be found for the use and benefit of the county to cancel such sale and to recover possession of the property sold; and in the event such property is recovered for the county in such action the purchaser shall not be entitled to a refund of the consideration paid by him for such sale."

We see no reason—and none has been suggested— why the above quoted Statute in all essentials should not be enforced as it is written. It contains no ambiguities and is clearly applicable to the case at bar. Anyone acquiring county property after the effective date of Act 193 of 1945 must comply with such Statute. The classic statement of Mr. Justice Holmes[7] is most appropriate:

[7] See *Rock Island Co.* v. *U. S.,* 254 U. S. 141, 65 L. Ed. 188, 41 Sup. Ct. 55.

"Men must turn square corners when they deal with the government."

For the reasons herein stated, the decree of the Chancery Court is reversed and the cause is remanded, with directions to enter a decree in accordance with this opinion.