STATE OF ARK. EX REL. *v.* CATE.

5-3030 · 371 S. W. 2d 541

Opinion delivered September 9, 1963.

[Rehearing denied October 14, 1963.]

*Sexton & Morgan,* for appellant.

*Gean, Gean & Gean, Charles R. Starbird,* and *Lonnie Batchelor,* for appellee.

Ed. F. McFaddin, Associate Justice. This case arose as a taxpayer's suit brought by appellant, Peevy, under Act No. 193 of 1945 (Ark. Stat. Ann. § 17-304 *et seq.* [Repl. 1956]); and challenging the sale of county property to appellee, Cate. Drawn into the suit was the applicability of Act No. 481 of 1949 (Ark. Stat. Ann. § 17-1501 *et seq.* [Repl. 1956]) regarding county hospital property. From a decree affording the taxpayer only partial relief, both sides have appealed: so the entire controversy is before us for trial *de novo* on the record.

For many years Crawford County had owned twenty acres, commonly called "the county farm property,"[1] but later called "the county infirmary." In the 1932 depression, the Works Progress Administration erected a stone building on the property, and Crawford County used the building and property for the intended statutory purpose of a county poor farm. By 1960 the building had become dilapidated, and Old Age Assistance grants had relieved many people from being inmates of the county poor farm; so there remained only one occupant of the property. The use to be made of the county poor farm or county infirmary became a problem to Crawford County. It would have cost the County over $80,000.00 to equip the property for use as a suitable rest home. At the regular January 1961 meeting of the Quorum Court of Crawford County, a motion was adopted "that

[1]Ark. Stat. Ann. § 83-301 *et seq.* (Repl. 1960) are the statutes concerning county poor houses.

the County Judge be given authority to appoint a board to dispose of the County Infirmary as the board sees fit."

The County Judge proceeded under Act No. 481 of 1949 (Ark. Stat. Ann. § 17-1501 *et seq.* [1947]) to accomplish the motion of the Quorum Court; and on February 15, 1961, there were appointed under the said Act eight persons as the Board of Governors of said "County Infirmary and grounds." This Board met on the same day and gave serious consideration to the problem of the County Infirmary;[2] and finally adopted a motion that the County Infirmary be placed on a long term lease to Clyde R. Cate (one of the appellees herein) for operation as a rest home. On March 14, 1961, a lease was executed by the said Board of Governors and by the County Judge and County Court, whereby Clyde R. Cate became the lessee of said County Infirmary. We briefly abstract the pertinent provisions of the lease, since its validity is one of the issues in this litigation: (a) the entire tract of twenty acres, with building, was leased to Clyde R. Cate for 25 years, with option to the lessee to renew for a like period; (b) the rental the County was to receive was $1.00 per year; (c) lessee agreed to expend enough money in improving and equipping the property to have and maintain a rest home that would meet State and national regulations; (d) lessee agreed to keep at all times, free of expense to Crawford County, one patient as sent by the County Judge. The lease also provided that the lessee had an option to purchase all of the leased property at any time during the life of the lease by paying Crawford County the sum of $7,500.00; and, in addition, if any of the twenty acres should be taken by eminent domain proceedings during the life of the lease, then the lessee would receive all such amounts paid in the eminent domain proceedings.[3]

Mr. Cate entered into possession of the leased property and immediately commenced spending substantial

[2] The minutes of that meeting are before us, and the testimony of some of the Board members. We are impressed with the high type public service the members were attempting to render. That they acted in good faith, is readily apparent.

[3] This option to purchase and the right to receive the proceeds of the eminent domain matters constitute problems later to be discussed.

sums in making the necessary and required improve-
ments. At the time of the trial below it was testified,
without substantial contradiction, that Mr. Cate had ex-
pended between $28,000.00 and $30,000.00, had an A-1
rated rest home with a capability of accommodating 23
patients, and plans to enlarge the rest home to accommo-
date 60 patients.

With the lease of the rest home thus accomplished
in March 1961, the matter might well have ended; but
then commenced the course of events which directly
caused this litigation. These events were evidently trig-
gered by the realization of Mr. Cate that his option to
purchase the property (as contained in his lease) might
be null and void. On July 15, 1961, the County Court
entered an order that the entire 20 acres (legally de-
scribed), known as the "County Infirmary Property,"
would be sold to the highest bidder "subject to the terms
of the said lease" held by Cates. This sale was a proceed-
ing under Act No. 193 of 1945 (Ark. Stat. Ann. § 17-304
et seq. [Repl. 1956]); and every step prescribed by said
Act was carefully followed.[4] The sale was advertised,
and only one bid was submitted; and that was the bid
of Clyde R. Cate for $7,500.00. That bid was accepted,
and the deed made and approved, as required by the law,
and delivered to Mr. Cate on August 4, 1961: so every-
thing seemed to be concluded.

Then on August 14, 1962, appellant Clyde Peevy,
as a citizen and taxpayer for the benefit of Crawford
County, filed the present suit in the Chancery Court as
a proceeding under Act No. 193 of 1945 (Ark. Stat. Ann.
§ 17-304 [Repl. 1956]), alleging that the sale of the prop-
erty to Clyde R. Cate was invalid, and praying for a
return of the property to Crawford County free of all
mortgages and conveyances executed by Cate. Various
lienholders and grantees from Cate were made defend-

---

[4] It is claimed by appellants that the spirit of the law was entirely
flouted in that the publication was in a little known newspaper; that
the assessor signed his appraisal of the property without seeing it; and
that various other matters occurred which showed that the spirit of
the Act was not fulfilled; but all of these go to the matter of good
faith and not to the "letter of the law" compliance.

.ants.[5] The defense of all the defendants was the absolute validity of the sale of the property by the County to Cate, and the good faith of all parties.[6] The cause was heard *ore tenus* by the Chancery Court and resulted in a decree:

(a) Holding void the option given Cate in the lease to purchase the property for $7,500.00;

(b) Holding that the effect of making the sale of the property subject to the Cate lease was to stifle bidding;

(c) Holding that at the time of the sale of the property it was worth $10,000.00 instead of $7,500.00, and that the effect of the stifling of the bidding was to defeat the County of $2,500.00; and

(d) Holding that the County was entitled to receive for the property an additional $2,500.00.

The learned Chancellor delivered a splendid opinion which clearly shows the many intricate problems arising in this case, and the earnest and sincere desire on the part of the Chancellor to accomplish substantial justice and equity.

From that decree both sides have appealed. Peevy, as appellant, insists that the entire property (less the 4.85 acres acquired by the State Highway Commission) should be returned to Crawford County, free of all mortgages and conveyances; and he cites and strongly relies on Ark. Stat. Ann. § 17-309 (Repl. 1956), which says that when county property is sold in violation of the Act, the sale shall be null and void, and a citizen and taxpayer may bring a suit in the Chancery Court within two years; ''and in the event such property is recovered for the county in such action the purchaser shall not be entitled to a refund of the consideration paid by him for such

[5] Cate had received $4,000.00 from the State Highway Commission for 4.85 acres taken for highway purposes, and personal judgment against Cate was prayed for that amount. Cate had sold one small tract for $500.00 to Joe Smith, who had executed a mortgage on the tract and built a home; and a return of that tract, free of the mortgage, was prayed. Cate had mortgaged the property for funds used to make improvements, and a cancellation of all such mortgaged was prayed.

[6] The Cates prayed that if the complaint of the plaintiffs be not dismissed, then the Cates "recover judgment for all improvements and taxes paid by them . . . and for all other just and equitable relief." The prayers of the other defendants were couched in somewhat similar language.

sale." Peevy relies strongly on our case, *State for the use of Miller County* v. *Eason,* 219 Ark. 36, 240 S. W. 2d 36. On the other hand, the appellees (Mr. and Mrs. Cate, Mr. and Mrs. Smith, and the Smith's mortgagee, First Federal Savings & Loan Association) maintain that the Act No. 193 of 1945 was literally followed; and that the Chancellor should not have rendered judgment against Cate for $2,500.00.

I. *The Lease Contract.* The first question to be decided is whether the lease of the County Infirmary property to Cate was valid or void. We have concluded that the County properly proceeded under the provisions of Ark. Stat. Ann. § 17-1501 *et seq.* (Repl. 1956); but we have concluded that the provision giving Cate an option to purchase the property was void, as was also the provision giving Cate the right to any money received in the eminent domain proceeding. The reason these two provisions are void is because such provisions constitute a disposition of the County property without compliance with Ark. Stat. Ann. § 17-304 *et seq.* (Repl. 1956).

The next question is whether said void provisions rendered void the entire lease to Cate, or whether Cate could claim that the lease was valid with these two provisions stricken. We conclude that Cate could legally so claim; and our authority for such conclusion is the case of *Storthz* v. *Sanger,* 108 Ark. 154, 156 S. W. 1020, which was also a chancery case. In the Storthz case, the guardian of an insane person executed a lease of real estate, which instrument gave the lessee an option to purchase the property on stated terms. Even though the lease was approved by the Probate Court, we held such option to purchase to be void, saying: "There appears nowhere in the statutes of this State any authority in the probate court to authorize the execution of such a contract . . ."— *i.e.,* option to the lessee to buy. But we further held:

"The invalidity of that part of the contract did not, however, deprive the lessor of the other benefits arising under it, and the heirs of the lessor were not put to an election either to ratify the contract as a whole, including the option to purchase, or to let the lessee occupy the

premises for the balance of the term free of rent. In other words, the lessees had rights under the contract notwithstanding the invalidity of one feature, and it was not within the power of the heirs of the lessor to repudiate the contract; therefore, they were not put to an election, either to affirm or repudiate it as a whole." Under the authority of said case, we conclude that Clyde R. Cate could validly hold the lease here involved, with the void provisions stricken. The Chancery Court so held; and we affirm that portion of the decree.

II. *Stifling of Bidding.* We come next to the question as to whether the sale of the property was in full compliance with Ark. Stat. Ann. § 17-304 *et seq.* (Repl. 1956); and we find that the letter of the law was fulfilled, just as we emphasized in *State, use of Miller County* v. *Eason,* 219 Ark. 36, 240 S. W. 2d 36:

(a) an order was entered in the County Court, setting forth the description of the property to be sold, giving the reason for the sale, and directing the County Assessor to appraise the property and certify same to the County Court;

(b) the County Assessor filed with the County Clerk his certificate of appraisal;

(c) the notice of sale was advertised in a newspaper for the time required by law, and Cate made a sealed bid of $7,500.00;[7]

(d) the bid was for more than three-fourths of the said appraised value;

(e) a majority of the Board of Approval approved the sale to Cate; and

(f) the County Court entered its order approving the sale and giving details.

As we say, the requirements were followed to the "letter of the law." It is true that in the present proceeding the plaintiff (appellant) challenged the appraisal, the publication, and other matters; but we need

---

[7] This was the only bid received.

not consider such challenges because there is one point which shows that bidding was stifled; and that is the fact that the County Court order and notice stated: "Said property will be offered for sale, and sold subject to a certain lease of Crawford County with Clyde Cate and Vian Cate, husband and wife, for a term of 25 to 50 years." It must be remembered that the lease on its face gave Cate a lease for 25 to 50 years at $1.00 per year and the care of one patient, *and that Cate had an option to buy the property at any time for $7,500.00, and in the interim Cate would receive all proceeds of any eminent domain money.* Even though we are now holding such italicized clause to be void, nevertheless the italicized clause at the time of the sale had not been determined to be void; and any prospective purchaser other than Cate would be "buying a lawsuit" regarding such provisions. It is clearly apparent that the effect of making the sale subject to the Cate lease was to arrange matters in such a way that no one except Cate would be in a position to make a substantial bid for the property; and the fact, that Cate alone offered a bid, is proof of such statement. The said arrangement constituted stifling of bidding. "Any act of auctioneer, seller, or purchaser which diminishes competition and stifles or chills the sale, vitiates the sale."[8] 7 C.J.S. p. 1255. In *Hinton* v. *Elliott,* 187 Ark. 907, 63 S. W. 2d 633, the property was ordered sold by the Commissioner "in the manner and form as provided by law for the sale of lands under attachment." We held that such language in the order of sale, coupled with the inadequacy of the price, was sufficient to amply justify the Court in refusing to confirm the sale.

It cannot be successfully claimed that when the County Court approved the sale of the property to Cate that stifling of bidding and all other defects and irregularities were cured, because the present proceeding is a

---

[8] On stifling of bidding see: Am. Jur. Vol. 30 A. p. 957, "Judicial Sales" § 98; 50 C.J.S. p. 674, "Judicial Sales" § 54; 5 Am. Jur. p. 463, "Auctions" § 26; 7 C.J.S. p. 1255, "Auctions and Auctioneers" § 7. See also *Preske* v. *Carroll* (Md.), 16 A. 2d 291. In *Dumas* v. *Owen,* 210 Ark. 505, 196 S. W. 2d 987, we had occasion to consider stifling of bidding in judicial sales. See also generally *Mulkey* v. *White,* 219 Ark. 441, 242 S. W. 2d 836.

taxpayer's suit in chancery, under the provisions of Ark. Stat. Ann. § 17-304 *et seq.* (Repl. 1956), and, under that statute, the taxpayer may urge *any defect* in the sale proceedings. So we hold that bidding was stifled in this sale; and the significant point is that the Sheriff (who was a member of the County Board of Approval under Ark. Stat. Ann. § 17-308 [Repl. 1916]) refused to approve the sale. Here is what he testified, with no objections registered to such testimony:

"Q. As a member of the Board of Approval and as bearing upon your refusal to approve the sale, what did you consider the fair market value of the property to be at the time it was sold?

"A. One of the Hospital Board members and myself—

"Q. No, sir, just tell me what you considered?

"A. Ten Thousand dollars."

The Chancery Court held that the bidding was stifled, and that the property was worth Ten Thousand Dollars; and we affirm that portion of the decree.

III. *The Disposition To Be Made Of This Case.* We come, next, to this severe problem which confronted the learned Chancellor, and which confronts us on this appeal. The appellants vehemently urge that under Act 193 of 1945 (Ark. Stat. Ann. § 17-309 [Repl. 1956]) the property should be returned to Crawford County free of any claim of any of the appellees. It is true that the said statute says that any sale contrary to the provisions of the Act is void, "and in the event such property is recovered for the county in such action the purchaser shall not be entitled to a refund of the consideration paid by him for such sale." The answer to the appellant's contention is that this particular sale was not contrary to the provisions of the Act, but was subject to attack for a different reason. Hence, the sale was merely voidable, and equity could mould a remedy to fit the case. *Hester* v. *Bourland,* 80 Ark. 145, 95 S. W. 992; *Walls* v. *Brundidge,* 109 Ark. 250, 160 S. W. 230; *Young* v. *Young,* 207 Ark. 36, 178 S. W. 2d 994.

Equity, in its power to mould the remedy to repair the wrong, may impose conditions on whatever relief it grants or refuses. In 19 Am. Jur. 51, ''Equity'' § 22, cases from many jurisdictions are cited to sustain this text:

''A court of equity has power to make its granting of relief dependent upon the performance of conditions by a party litigant, if the conditions are such as are imposed in the exercise of a sound discretion and of a character calculated to satisfy the dictates of conscience. The court may thus protect and give effect to the rights of one party while awarding relief to the other. The court is not restrained by strict legal rights.''

In *Central Kentucky Co.* v. *Comm.*, 290 U. S. 264, 54 S. Ct. 154, 78 L. Ed. 307, Mr. Justice Stone used this language:

''The power of a court of equity, in the exercise of a sound discretion, to grant, upon equitable conditions, the extraordinary relief to which a plaintiff would otherwise be entitled, without condition, is undoubted. It may refuse its aid to him who seeks relief from an illegal tax or assessment unless he will do equity by paying that which is conceded to be due. *State Railroad Tax Cases,* 92 U. S. 575; *Cummings* v. *National Bank,* 101 U. S. 153; *Peoples National Bank* v. *Marye,* 191 U. S. 272, 287; see *Norwood* v. *Baker,* 172 U. S. 269, 294. It may withhold from a plaintiff the complete relief to which he would otherwise be entitled if the defendant is willing to give in its stead such substituted relief as, under the special circumstances of the case, satisfies the requirements of equity and good conscience.''

Our Court, in *Quality Excelsior Coal Co.* v. *Reeves,* 206 Ark. 713, 177 S. W. 2d 728, said:

''*Conditions Imposed on Relief to Plaintiff.* Having found that the cause is cognizable in a court of equity, and that relief may be granted by injunction, it follows as a corollary that the court may impose conditions on the relief to be granted the plaintiff, or may grant other relief in lieu of injunction. One of the peculiar attributes of a court of equity is the power to mould the relief to

fit the particular case. There are salient facts in this case that call for the exercise of this equitable power.''

With the foregoing authorities in mind, we consider the situation confronting the Chancery Court. At the outset it must be remembered that even if the *sale* should be set aside, nevertheless the *lease* would remain as valid, less the option and the provisions about the eminent domain money, as heretofore mentioned: so the County would not recover *possession* of the property. Then there are other matters that complicate the situation. Mr. Cate and his wife had mortgaged this and other property to obtain the needed funds and had expended in excess of $28,000.00 in improving the property, equipping the rest home, and securing an A-1 rating for it. Twenty-three persons are occupying the rest home because of State or federal aid. Whether Cate, or his mortgagee, could claim a lien to the extent of the improvements—under the theory of unjust enrichment—is itself an unanswered question.

Furthermore, Cate sold a small parcel of the property to Mr. and Mrs. Smith, who borrowed money from a building and loan association and built a home on the purchased parcel. To completely set aside the sale of all the property would be to put the Smiths and their mortgagee in an almost helpless position. In addition, the State Highway Commission, in eminent domain proceedings in the Circuit Court, has taken 4.8 acres of the property. To completely set aside the sale would leave open the question as to the validity, if any, of the condemnation proceedings, and the payment of the proceeds to Cate. The condemnation proceedings were in November 1961; the sale to the Smiths was in December 1961; and the present suit was not filed until August 14, 1962. Of course, under the statute, the taxpayer had until July 1963; but, by delaying until August 14, 1962, the taxpayer allowed various situations to develop, as previously indicated, whereby to set aside the entire sale would work a grave inequity.

In such a complex factual and legal situation the learned Chancellor moulded the remedy to fit the wrong.

The Court found that the property was actually worth $10,000.00 at the time of the sale to Cate; that Cate paid only $7,500.00; that Cate should pay an additional $2,-500.00, with interest thereon at 6% per annum from July 1961 until paid and should pay all costs of this litigation;[9] that when all such should be done by Cate, then equity would be satisfied and the sale would not be set aside; but that if Cate should not pay the said amount within a reasonable time, then the sale of the property from the County to Cate would be set aside. We conclude that the Chancellor made a wise and equitable decision; and we affirm his decree and remand the cause to the Chancery Court to reinvest that Court with jurisdiction to again fix a reasonable time[10] within which Cate must comply with the decree, otherwise the Chancery Court will order a resale of the property on such terms and conditions as it sees fit. Costs of this appeal shall be paid by appellee.

[9] There is authority for requiring the purchaser to increase his bid as a condition for obtaining a confirmation of the sale. See *State Nat'l Bank* v. *Neel,* 53 Ark. 110, 13 S. W. 700, and annotation in 105 A.L.R. 366 entitled: "Power of court as condition of confirmation of judicial sale to require successful bidder to increase his bid."

[10] The Chancery decree gave the defendants (appellees here) sixty days from October 25, 1962 to pay the additional $2,500.00 and interest. Since such time expired during this appeal, the Chancery Court may fix a new period.