MARY M. MORRISON ET AL. *v.* GEORGE F. KINSTRA ET UX.

1. MARRIED WOMAN. *Contract to purchase land.*
   The contract of a married woman to purchase land on a credit imposes no obligation on her personally, or on her separate estate.

2. TRUST FUND. *Converted into other property. Effect.*
   A trust fund is traceable into whatever character of property it may be converted, and is still impressed with the trust; and the confusion, or mixing, of the trust estate with the trustee's own property will not prevent the separation of the former from the latter.

3. SAME. *Conveyance of land by guardian. Rights of ward.*
   Where a guardian buys land with the funds of his ward, though not under the direction, or even by authority, of the court, and takes the title in his own name, with the addition, "trustee," he cannot, as legal owner, convey to a subsequent purchaser a good title to such land, "free from embarrassment and reasonable doubt," notwithstanding the guardian may also have an individual interest in the same; but a purchaser, with notice, would take the title subject to the right of the ward to pursue the fund into the land and hold it.

4. SAME. *Estate of a ward. How divested.*
   A ward's interest, legal or equitable, in real estate is not affected by any private sale, or contract for sale, made by the guardian, but can only be divested by a decree of the proper court and a sale at public vendue.

5. SAME. *Contract to convey ward's land. When canceled.*
   Where a guardian contracts, *ultra vires,* to convey his ward's lands, and it appears that the guardian, in making the contract, relied to a great extent upon the assurances of the party to whom the conveyance is to be made as to his power to convey, the court will not hold him individually bound by such contract, although the legal title be in his name, but will, upon his application, cancel the contract.

APPEAL from the Chancery Court of Adams County.

Hon. THOMAS Y. BERRY, Chancellor.

The bill in this case was filed by the appellees, Mary M. Morrison and George Anna Morrison, through her next friend, against George F. Kinstra and his wife, Martha J. Kinstra, to enforce the specific performance of a contract of the latter to purchase a certain tract of land, or for a cancellation of the contract, and to have an account taken of the rents, etc. The defendants demurred to the bill, and, the demurrer being overruled, they appealed. The allegations of the bill are stated in the opinion of the court.

*Martin & Lanneau* and *J. G. Leach*, for the appellants.

1. If Mrs. Morrison contracted as guardian, and the contract is void as to her individually, then she could maintain ejectment, if she was invested with the legal title, and she was owner of the legal title when the contract was made.

2. In attempting to enforce a specific performance or a cancellation of the contract, Mrs. Morrison should have shown a performance on her part of her agreement to procure the intervention of the courts to perfect the title, by a divestiture of the ward's "interest, legal or equitable."

3. The procuring of the orders and decrees mentioned in the contract was a condition precedent, and Mrs. Kinstra had the right to refuse further payment of purchase-money whenever Mrs. Morrison manifested an intention not to procure them and perfect her power to convey.

4. Mrs. Kinstra cannot be compelled to surrender her interest in the contract as long as she performs her part of the agreement, and, in the absence of the required orders or decrees, she is not in default in paying rent. Mrs. Morrison cannot avail herself of the fact that Mrs. Kinstra, as a married woman, could not be compelled to perform the conditions of a contract of purchase on a credit, if she elected to surrender the land. She could compel a specific performance, while Mrs. Morrison could not. *Johnson* v. *Jones*, 51 Miss. 860.

5. If the legal title is in Mrs. Morrison, she can sue at law; if in the minor, Mrs. Morrison's contract, as guardian, is void, and ejectment could be maintained. If the legal title is in

the mother and daughter, they can sue at law. If the equitable title is in the minor, with knowledge on Mrs. Kinstra's part of the fact at the date of the contract, Mrs. Morrison must have it divested, or go to work in that direction, before she can have specific performance, or show default on Mrs. Kinstra's part.

*A. H. Handy,* for the appellees.

1. Mrs. Morrison, by her purchase, became invested with the legal title to the land, and she was in a position to convey the same under the contract made by her with the defendants. All that she was required to do, by the contract, was to comply substantially with it, and that the bill shows she was able and ready to do, and it tenders such performance by deed. It was not necessary that she should do the useless act of taking further steps to divest the heir's title, when that had already been effectually done. Nor is it any valid objection to her power to make the conveyance that the land was conveyed to her as trustee, for that was a matter with which the ward alone was concerned; and although Mrs. Morrison was accountable to her ward for her interest in the amount paid for the property, or for what might be realized by a subsequent and more advantageous sale, yet, as she was vested with the legal title by her purchase and deed, that was sufficient to enable her to convey the legal title to any subsequent purchaser, leaving the matter of equitable settlement between her and her ward to be adjusted in her settlement of her account as guardian.

2. The prayer of the bill is that the defendants perform the contract, by paying the money according to its terms, or, in default thereof, that the contract be canceled and possession of the land be restored to complainant Mrs. Morrison, with payment for the rents and profits to be found due on an account to be taken as prayed. It is clearly unconscientious for the defendants to keep the property, and not pay for it according to the contract; and it is but just that they should be com-

pelled to surrender it, or to pay so much of the purchase-money as is due under their contract.

SIMRALL, C. J., delivered the opinion of the court.

Mrs. Morrison tendered with her bill, for acceptance, to Mrs. Kinstra, a deed of the lands embraced in the contract made in Arkansas in ——, 1868. If that shall be held to be a compliance with the contract, she is entitled to a specific performance, unless Mrs. Kinstra interposes her coverture. The bill discloses how Mrs. Morrison acquired the title, and its nature. It appears that this tract of land, with others, was sold in 1860 by Mrs. Morrison, guardian for her infant daughter, George A. Morrison, on a credit, and was bought by one Joute, who not being able to pay the money, the land was subsequently sold under decree of the Chancery Court foreclosing a security upon it for the debt.

At that sale Mrs. Morrison became the purchaser, and took the deed to herself, " trustee." The explanation of the transaction, made by the bill, is that she bought the property in part satisfaction of the debt due to her ward, and that she had some interest in it, on account of her dower in the land, which was also included in the sale to Joute, and took the deed to herself, " trustee," to manifest that her ward was interested in the land. She states that she holds for resale for the benefit of her ward and herself, both to share proportionally in any profits that might be made.

It will be observed that Mrs. Morrison attempted, by private contract, to sell the property of her ward to Mrs. Kinstra, and undertook to procure the license of the proper court to make the sale. But she could not in this mode bind her ward; moreover, the law required that, under the decree, the land must be sold at public vendue, to the highest bidder.

It will also be noted that though the contract was made by Mr. Kinstra, as agent or attorney in fact for his wife, it purported to be her agreement, by which she personally engaged

to buy on a credit, and pay several installments of $1,000 each. These covenants imposed no obligation on her, nor on her separate estate. At any time she could interpose her coverture in bar of the recovery of the money, or of a specific performance. It would be purely optional with her whether she would comply with her contract or not.

Mrs. Morrison could not conclude the rights of her ward in the manner proposed; nor is Mrs. Kinstra under any absolute obligation which Mrs. Morrison could enforce.

It must be borne in mind that the interests of the ward, who is a co-complainant; are distinctly presented in the bill, and should not be injuriously affected by the improvident and inconsiderate acts of the guardian.

Mrs. Morrison alleges that she entered into the contract without knowledge of the capacities of Mrs. Kinstra under the laws of Mississippi, and without a distinct knowledge of the condition of the title; and that she was influenced to make the contract by the representations of Mr. Kinstra, she not, at the time, having access to competent legal advice.

. The purchase of Mrs. Morrison under the decree against Joute had the effect of converting the funds of her ward into real estate. In 1860 the Probate Court had declared that it would promote the interest of the ward to turn the land into money, and had granted to the guardian license so to do — Joute, the purchaser at that sale, not having paid for the land. When it was exposed to judicial sale, to raise the money, Mrs. Morrison took the responsibility of buying in the land, as she alleges, to protect her daughter and ward — to prevent a sacrifice of the property — on account of the depressed financial condition of the country. But, in making the purchase, she reconverted the funds of her ward into real estate. That is to say, she bid in the land, and to that extent satisfied the debt to her ward. Mrs. Morrison, before she assumed to act, might have obtained the consent of the Probate Court to make the purchase for her ward. In that case the deed would have been to the ward.

The result of the transaction is that Mrs. Morrison has

invested the trust fund in the land. As a badge that the land is impressed with a trust, the conveyance is to Mrs. Morrison, " trustee." A right immediately springs up in favor of George A. Morrison, the ward, to follow her funds into the land and hold it for her own account; or to hold the trustee personally liable for the breach of trust. 1 Story's Eq. secs. 533, 514; *Oliver* v. *Piatt*, 3 How. 401.

That election cannot be made until the ward has attained majority. If the investment is a bad one, George A. could make Mrs. Morrison account for the fund. If a good investment, she could take to herself the profits and advantages of it. *Pressly* v. *Ellis*, 48 Miss. 582. That right would attach against a vendee, with notice.

Mrs. Kinstra, having knowledge that such are the claims of the ward on the land, if the contract were specifically carried out, would take the risk of the election the ward might make at her majority.

No rule is, perhaps, more universal than that he who asks for a specific performance must be in a condition himself to perform. *Morgan's Heirs* v. *Morgan*, 2 Wheat. 299. The complainant must be able to make a title free from reasonable doubt. Fry on Specific Perf. 347; *Bates* v. *Delavan*, 5 Paige, 299.

Waiving an analysis of the numerous cases that could be cited, we think this doctrine is clearly deducible from them:

1. That into whatsoever character of goods, securities, or property a trust fund may be converted, it is still impressed with the trust.

2. The confusion, or mixture, of the trust estate with the trustee's own property presents no obstacle in the way of separating the former from the mass, and dealing with it as trust estate.

Some of the cases are the following: *Thompson* v. *Perkins*, 3 Mason, 232; *Overseers of Poor* v. *Bank of Virginia*, 2 Gratt. 544; *National Bank* v. *King*, 57 Pa. St. 202; *Cook* v. *Tullis*, 18 Wall. 332.

We are of opinion that the complainant has not offered a

title free from embarrassment and reasonable doubt, and cannot make such conveyance as Mrs. Kinstra would be bound to accept; and she cannot insist on a specific performance of the contract, waiving the difficulty on account of Mrs. Kinstra's coverture.

Ought a rescission to be granted? Mrs. Morrison, as she alleges, was resident in Arkansas, with her ward, at the time she was visited by Mr. Kinstra to make the contract of purchase for his wife; that she had, as she fully learned afterwards, vague and uncertain knowledge of the state of the title, and relied upon and accepted the statements of Mr. Kinstra as correct on that subject. In the contract it was assumed, as the basis of it, that the title was in her ward, and that it would be necessary to procure the order of the proper court to sell. It is *ultra vires* of the powers of the guardian to bind the title and interest of the ward by a contract to sell. Such an agreement contravenes the policy of the law. The title of the ward can only be divested by proper decree and sale at public vendue, whether the interest of the ward be legal or equitable.

Moreover, the complainants cannot compel Mrs. Kinstra to perform, by accepting the title and paying the money.

It is proper, however, to retain the bill, to grant the alternative relief of setting aside the contract and taking an account of the rents.

The decree overruling the demurrer is affirmed, and the cause remanded for further proceedings.