STORTHZ *v.* SANGER.

Opinion delivered May 5, 1913.

1. INSANE PERSON—JURISDICTION OF PROBATE COURT.—The jurisdiction of the probate court, with respect to control of the property of an insane person, is confined to limits prescribed by the statute. (Page 159.)

2. INSANE PERSON—CONTRACT FOR SALE OF INSANE PERSON'S LAND.— There is no statutory authority giving the guardian of an insane person power to enter into an executory contract giving a person an option to purchase property of the insane person, and such a contract, although authorized by the probate court is void.   (Page 160.)

3. ESTOPPEL—CONDUCT OF PARTIES.—When a lease of the property of an insane person made by the guardian with an option to purchase, is not voidable but void, the heirs of the insane person are not estopped to plead the invalidity of the lease, although they have received rent for a long period of years under the said lease. (Page 160.)

4. CONTRACTS—CONTRACT INVALID IN PART.—When the guardian of an insane person gave a lease on the latter's property with an option to the lessee to purchase at the end of the term, the entire contract is not rendered void by reason of a portion thereof being void, and the parties are entitled to the benefits under the valid portion of the contract.  (Page 160.)

5. PARTITION—SALE OF PROPERTY—DISTRIBUTION OF PROCEEDS.—When the assignee of a lease acquired a three-fifths interest in certain land, and failed to exercise an option in the lease to purchase the entire interest, and upon such failure the owner of the remaining two-fifths interest did not elect to pay the value of the building which had been erected by the lessee, but insisted upon his ownership of the building and a two-fifths interest in the land brought partition, the building may be ordered sold as a part of the realty, and the proceeds distributed according to the rights of the parties. (Page 161.)

Appeal from Pulaski Chancery Court; *John E. Mar-tineau*, Chancellor; affirmed.

*Dan W. Jones,* for appellant.

1. The order and judgment of the probate court authorizing and approving the lease made by George E. Dodge as guardian of Julia Robbins to Isaac and Joseph Wolf, which provides that at the end of said lease the lessees should have the option to purchase the lot at the appraised value of same, was not void, but merely voidable when directly attacked. It is not subject to collateral attack. 1 Herman on Estoppel, § 351; Const. Ark. 1874, art. 7, § 34; 44 Ark. 270; 47 Ark. 419; 41 Ark. 426; 29 Ark. 526; 31 Ark. 183; 33 Ark. 298; 11 Ark. 31; 13 Ark. 35; *Id.* 505; 14 Ark. 568; 18 Ark. 63; *Id.* 295; 19 Ark. 485; 20 Ark. 78; 21 Ark. 364; 23 Ark. 129; 11 Ark. 552, 531, 532, *et seq.;* 52 Ark. 7; *Id.* 341-2-3; 66 Ark. 416; 73 Ark. 612; 70 Ark. 88.

2. Plaintiffs by their acquiescence for fifteen years are, under the provisions of the lease, estopped from denying the validity thereof. 5 Ark. 424, 429; 73 Ark. 614-616; 55 Ark. 85; 64 Ark. 345.

3. The court erred in ordering a sale of the lot, *including the brick building thereon,* by a commissioner appointed by the court, contrary to the provisions of the lease. The lease is a contract in entirety, and its provisions can not be changed nor part of them accepted and others rejected.

*Ratcliffe & Ratcliffe* and *Bradshaw, Rhoton & Helm,* for appellees.

1. It is not contended that the lease is void, but only that clause which provides that "lessees shall have the option at the expiration of this lease to purchase said lot at its appraised cash value," the same being an attempt to authorize the sale of lands belonging to a *non compos mentis* in a manner not authorized by law. It is void in this respect. 40 Cyc. 214-16-17; 67 Ark. 325-29; 108 U. S. 143, 2 Addison, Contracts, 814, and note; 21

Cyc. 120, subdiv. 6; 53 Ark. 37; 45 Ark. 41; 33 Ark. 425; 98 Ark. 63-67.

Where a probate court acts beyond its jurisdictional limits, such acts or orders and judgments are void. In this case the probate court in approving and authorizing the clause in question acted beyond its jurisdictional limits and its act is void and subject to collateral attack. 32 Ark. 97; 33 Ark. 490; 47 Ark. 460; Kirby's Dig., § 3793; 23 Cyc. 1070, "E;" 74 Ark. 81, 87; 48 Ark. 151, 156; 90 Ark. 195. See also 32 Ark. 97; 47 Ark. 460; 95 Ark. 164; 54 Ark. 480; 69 Ark. 539; 74 Ark. 149; 99 Ark. 339.

2. The doctrine of estoppel has no application here. Appellees received the rent as they had the right to do, but did nothing more. The provision insisted upon by appellant was void upon its face and appellees had the right to so regard it, and no action was necessary on their part to raise any question as to its validity. There is no duty or necessity for resorting to legal or equitable remedies to establish a right until some one threatens to destroy or impair it, or asserts an adverse right. 88 Ark. 395-404; 70 Ark. 256; 88 Ark. 478-481; 82 Ark. 367; 145 U. S. 368; 99 Ark. 260-3; 2 Pomeroy, Eq. Jur., § 804; 97 Ark. 43, 49.

Storthz is a cotenant of appellees, and as such, limitation and estoppel do not apply. 61 Ark. 527; 42 Ark. 289.

The order authorizing a lessee to become a purchaser could only be an executory contract to convey, and the probate court had no jurisdiction to authorize any such contract. 38 Ark. 31; Kirby's Dig., § 5209; *Id.,* § 4024-4028; 66 Ark. 437; 33 Ark. 425; 98 Ark. 63.

3. Under the circumstances the chancery court had jurisdiction to order the sale of the lot, including the building thereon, and, having found that there could be no partition in kind and that it was to the best interest of all the parties to sell the whole property, was warranted in so decreeing. 33 Ark. 376, 386; 77 Ark. 317, 319; 98 Ark. 151.

McCulloch, C. J.   The subject-matter of this litigation is a lot, forty-two feet in width, fronting on Main street in the city of Little Rock, on which is situated a brick store building.   Appellees owned an undivided two-fifths of the ground by inheritance from Julia Robbins, the former owner, who died intestate in the year 1897.   Appellant owns the other undivided three-fifths interest by purchase from the other heirs of Julia Robbins, and he is also the owner of the building on the lot, which was constructed under a lease contract whereby the ownership of the building was reserved in the lessee who constructed it.

Julia Robbins was adjudged by the probate court of Pulaski County to be a person of unsound mind, and George E. Dodge was duly appointed guardian of her person and estate.   Dodge, as such guardian, entered into a contract with Isaac and Joseph Wolf, whereby he leased said lot to them for the term of twenty years from September 1, 1892, the lessees to pay a rental price of $1,200 per annum and pay all taxes assessed during the term.   The contract contained the following stipulation:

"Said lessees shall have the option at the expiration of this lease to purchase said lot at its appraised cash value, said value to be determined by appraisement to be made by two competent disinterested persons, one of which shall be selected by each of the parties hereto, and in case these two can not agree, they shall select a third disinterested person to decide, and such decision shall be final and binding on all parties, and upon payment of the price of said lot so ascertained, a good and sufficient deed shall be executed to said lessees by said lessor, or his successors in office, conveying absolutely in fee simple the said lot to the said lessees.   At the expiration of this lease, if the lessees do not exercise their right to purchase the ground, the lessor shall pay to the lessees in cash the then value of the building and the improvements on said ground, such values to be ascertained in the same manner as is hereinbefore provided for ascertaining the value of the ground, and thereupon said

buildings and improvements shall become the property of the lessor."

This contract appears to have been executed as a renewal of a former contract between the same parties under which the building on the lot had been constructed by the lessees.

An order of the probate court was duly made and entered authorizing said guardian to execute said contract.

The lessees named in the contract assigned the lease to Bertha Ottenheimer, who, on July 31, 1911, assigned the same to appellant, who had theretofore become the owner of an undivided three-fifths interest in the land by purchase from the heirs of Julia Robbins.

Prior to the expiration of the lease appellant notified appellees of his intention to exercise the option to purchase said property under the terms of the contract, and appellees, in response, notified him of their refusal to sell and convey their interest in the property.

After the expiration of the lease appellees instituted this action against appellant in the chancery court of Pulaski County praying that "on the adjustment of the amounts to be paid by plaintiffs for said building and the title vested in them, respectively, that the said lot and premises be partitioned among the several owners as their interest may appear, and if an equitable partition can not be made in kind, that the said property be sold free of all claims, present, future and contingent, and the proceeds equitably distributed."

Appellant demurred to the complaint, but the demurrer was overruled, and he then answered. Among other things he alleged that appellees inherited their interest in the property on the death of Julia Robbins, which was about fifteen years before the expiration of the lease, and thereafter accepted their part of the rental price of the building, thus ratifying the terms of the contract, and that they are estopped to question the power of the guardian to enter into the contract giving an option to the lessees to purchase.

The cause was tried upon an agreed statement of facts, and the court rendered a decree in accordance with the prayer of the complaint, ordering the property sold, including the building, so that the proceeds could be distributed according to the rights of the parties.

The court declared that part of the contract giving the lessees the option to purchase the lot at the expiration of the specified term to be void and unenforceable; and the principal question presented to us for decision is whether it was within the jurisdiction of the probate court to authorize or approve such a contract.

It is very clear that this was not within the jurisdiction of the probate court, which is confined, with respect to control of the property of infants and insane persons, to such limits as are prescribed by the statute. In other words, the court possesses only such powers in that respect as the statute confers. This rule is stated by Judge EAKIN, in the case of *Myrick* v. *Jacks,* 33 Ark. 425, as follows:

"Courts of probate have, by the statute, been entrusted with some limited powers over the estates of minors in the hands of administrators and guardians, and within the scope of those statutory powers they are certainly entitled to all presumptions according to superior courts of record. But they had no such jurisdiction by common law, and beyond the limits given they have none now. When they proceed to do a thing which, by proper proceedings and upon a proper case made, they are authorized to do, it will be presumed they have acted correctly; or if the proceedings have been irregular or the conditions of jurisdiction not strictly fulfilled, it is error to be corrected on appeal or *certiorari.* But if they undertake to make an order not authorized under any circumstances, although they may have jurisdiction over the same property for other purposes, it is void."

Applying that rule, this court held, in the case of *Meyer* v. *Rousseau,* 47 Ark. 460, that the power to exchange the lands of an infant for other lands was not included within the power to sell such lands and that it

was not within the jurisdiction of the probate court to authorize an exchange.

The doctrine of that case was reaffirmed in *McKinney* v. *McCullar*, 95 Ark. 164.

This rule applies, of course, to orders with respect to the property of persons of unsound mind as it does to the property of the estates of decedents and of infants.

Now, the contract, so far as it related to the sale of the real estate, was entirely executory and amounted only to an option to the lessees to purchase at the expiration of the term. There appears nowhere in the statutes of this State any authority in the probate court to authorize the execution of such a contract. The statute authorizes the probate court to make an order directing the guardian to mortgage or lease the property of his ward or to sell the same at public vendue to the highest bidder and report his proceedings in that regard back to the court for approval. But this does not include the power to enter into a contract for a private sale of property, much less to enter into an executory contract giving a person an option to purchase. *Meyer* v. *Rousseau, supra.*

It is next insisted that appellees, on account of having received their part of the rents under the contract for many years, are estopped to plead the invalidity of the contract. But we are of the opinion that this contention is unsound. The contract was not merely voidable; it was absolutely void, because the probate court possessed no power to direct the guardian to execute it. Being void in the beginning, it gained no vitality by the succession of the heirs.

The invalidity of that part of the contract did not, however, deprive the lessor of the other benefits arising under it, and the heirs of the lessor were not put to an election either to ratify the contract as a whole, including the option to purchase, or to let the lessee occupy the premises for the balance of the term free of rent. In other words, the lessees had rights under the contract notwithstanding the invalidity of one feature, and it was

not within the power of the heirs of the lessor to repudiate the contract; therefore, they were not, put to an election, either to affirm or repudiate it as a whole.

Another objection to the decree is that it ordered the sale of the building as a part of the realty. Appellees concede, in their complaint, appellant's ownership of the building, and the sale is only for the purpose of converting the whole property into money so that it can be distributed between the parties according to their rights. Appellees had the right, under the contract, to take over the building at a price to be settled by appraisers, but they were not bound to do so. Their failure to take advantage of that privilege doubtless gave appellant, under a fair interpretation of the contract, the right to remove the building; but he has not elected to do so or asked to be given the privilege to do so. His attitude here is merely that of insisting upon his ownership in the building without conceding to appellees the right to enjoy their interest in the property since the expiration of the lease. In this state of the case the only thing that a court of equity can do is to sell the whole property, ascertain the value of the building, and distribute the proceeds of the sale in accordance with the rights of the parties. *Stirman* v. *Cravens,* 33 Ark. 376. In this instance the court reserved for further consideration the ascertainment of the rights of the parties in the property, including the value to be placed upon the building owned by appellant. It would perhaps have been better for the court, before ordering the sale, to determine the question of value; but no objection seems to be urged against the decree on that score.

With appellant's rights protected in his ownership of the building, we can discover no valid objection to the chancellor's decree ordering a sale of the property for distribution of the proceeds. The decree is therefore affirmed.