PICKETT, et al. *v.* BOUTWELL

No. 41616          January 9, 1961          125 So. 2d 822

*Roy N. Lee,* Forest, for appellants.

*O. G. Idom, O. B. Triplett, Jr.,* Forest, for appellee.

GILLESPIE, J.

In this case we hold that when an optionee at the time of obtaining the option makes to the optioner false statements of material facts calculated to induce the optioner to sign the option, the optionee may not invoke the aid of equity to enforce specific performance.

Ben F. Pickett and Mrs. Ola Pickett, his wife, defendants below and appellants here, executed an option to sell 158 acres of land to Mrs. Alice Wilkerson. The option was dated February 16, 1959; the consideration was $1.00; and the option gave Mrs. Wilkerson sixty days within which to exercise the option by paying the sum of $10,000. The option was transferred to appellee, D. W. Boutwell, who tendered the purchase price within the option period. Appellants refused to accept the purchase price or execute the deed. Boutwell brought suit for specific performance. Appellants defended on the grounds of lack of mental capacity on the part of Ben F. Pickett, overreaching of appellants by Mack Wilkerson who secured the option for his wife, Mrs. Alice Wilkerson, fraud on the part of Mack Wilkerson in making false statements at the time of obtaining the option, and other grounds not necessary to set out.

The land in question is situated south of Morton in Scott County. At the time the option was obtained, an oil well was being drilled about two and one-half miles from the subject land. This well was brought in as a producing well two days after the option was signed. Ben F. Pickett was about seventy years of age. He had theretofore suffered several serious strokes and several lesser ones. The proof shows that at times he was irrational. When the option in question was signed, Ben F. Pickett was upset about a previous option given the same party on the same land wherein the purchase price was $8,000, and no minerals were reserved by the Picketts. This option was destroyed and is not before us. Mack Wilkerson, who had also secured the previous option, went to the Pickett's home on February 16, 1959, and stayed about five and a half hours until the option

in question was signed. The testimony shows that Wilkerson was very eager to obtain the option. He finally agreed to raise the purchase price to $10,000. Mr. Pickett brought up the matter of the oil well being drilled near his land and then Wilkerson stated that there was no oil down there and that the derrick was being torn down and was being moved away. Wilkerson also agreed that the option provide that the Picketts could reserve half of the royalty for the life of Ben F. Pickett and Mrs. Ola Pickett. The option was then prepared by Mack Wilkerson at the Pickett home and was signed by the Picketts.

Most of the lengthy record consists of testimony as to the mental capacity of Ben F. Pickett, but it is unnecessary to summarize that testimony for the chancellor found that Ben F. Pickett had the mental capacity to understand the nature of the transaction. The chancellor made a specific finding of fact that Mack Wilkerson made false representations about the oil well derrick being torn down and moved away, but the chancellor further stated in his opinion that Mr. Pickett did not seem to have been influenced by these false statements. He stated that the well was only about two miles away and Mr. Pickett could easily have ascertained whether the statements were true, but chose not to investigate. A decree for specific performance was entered.

The false statements made by Mack Wilkerson were highly material and were representations of existing facts. They were calculated to induce the Picketts to sign the option. There is no basis for a finding that the Picketts were not influenced by these false statements merely because they did not choose to investigate for themselves before signing the option. These statements were not mere persuasion or sales talk. They constituted fraud. Whether the oil well derrick was being then torn down and moved away was probably the most vital fact surrounding the proposed transaction.

■■ ■ Suits for specific performance are not governed by the same principles as suits at law for damages or suits in equity to set aside executed contracts. In suits for specific performance, a weaker case is sufficient to defeat the action. ■■■ Courts generally deny specific performance because of false and fraudulent representations upon the part of complainant, which are not such, or were not made in such circumstances, as to invalidate the contract itself or to prevent or sustain other forms of relief. ■■ ■ This is in accord with the fundamental principle of equity that he who comes into equity must come with clean hands. Daniel v. Frazer, 40 Miss. 507; Archer v. Sinclair, 49 Miss. 343; Everett v. Hubbard, 199 Miss. 857, 25 So. 2d 768; 49 Am. Jur., Specific Performance, Sec. 46, et seq.; 81 C.J.S., Specific Performance, Sec. 40; 65 A.L.R. 7; 87 A.L.R. 1345.

■■ ■ In the three Mississippi cases cited in the preceding paragraph, the Court said that specific performance is not a matter of right, but of sound legal discretion. This does not mean that an equity court will not decree specific performance when the contract is legally valid, fair and equitable. The discretion referred to in those cases is to be employed when the contract is legally valid but is tainted with such unfairness, impropriety, or fraud that it would be inequitable to require its performance. The courts do not attempt to classify all the acts or circumstances which constitute such unfairness as to preclude the action. For instance, the mere fact that one makes a bad trade or bargain does not constitute such unfairness, and the Court will not exercise its discretion to relieve one of a bad bargain on that ground alone. Clinton Service Co. v. Thornton, 233 Miss. 1, 100 So. 2d 863. ■■ ■ But when, as in this case, the option is procured by one who made false representations of existing facts which were material to the transaction and were calculated to induce the optionors to execute the option, such fraud will preclude specific performance as a matter of law.

The decree is reversed and judgment entered here dismissing the bill.

Reversed and judgment here.

*Hall, P.J.,* and *Kyle, Arrington* and *Ethridge, JJ.,* concur.