THOMPSON FUNERAL HOME, INC., et al. *v.* THOMPSON, et al.

No. 43009 April 20, 1964 162 So. 2d 874

*Gartin, Hester & Pickering,* Laurel, for appellants.

*Pack & Ratcliff,* Laurel, for appellees.

ETHRIDGE, J.

The question in this case is whether a chancery court can authorize the guardian of a non compos mentis to grant an option to sell the ward's real estate (along with a surface lease), with the purchase price to be determined by privately appointed appraisers, and all interim rentals paid by the lessee-optionee to be deducted from the purchase price at time of exercise of the option. We hold it does not have such power under Mississippi statutes, and affirm the decree of the trial court to that effect.

Since 1940 Mrs. Annie Mae Thompson, the ward, owned real estate in Laurel on which Thompson Funeral Home was operated. Around 1954 Mrs. Thompson became mentally incompetent. She has been a patient in the East Mississippi Insane Hospital for several years. Until 1959 the funeral business on this land was owned and operated by her husband, Charles H. Thompson, an appellee. He sold it to appellants, Thompson Funeral Home, Inc. and Memory Chapel, Inc. The latter also desired to lease the property. Mr. Thompson, as guardi-

an for his wife, joined by two next of kin, including Mrs. Dorothy Ann Thompson Webb, the ward's daughter and an appellee, petitioned the Chancery Court of the Second Judicial District of Jones County for authority to execute a lease of the ward's property to Memory Chapel, Inc., for a term of six years, at a rental of $600 per month, with the lease to contain an option in the lessee to buy the property, in accordance with the terms of the lease and option attached to the petition. On October 23, 1959 the chancellor entered an order finding that "it would be to the personal best interest of the ward and advantageous to the estate of the ward" to authorize the lease with option. He therefore authorized Mr. Thompson as guardian to execute the lease with option to Memory Chapel, Inc. Paragraph 8 contained the following provision:

"OPTION TO PURCHASE. The lessee shall have an option to purchase the premises at any time during the aforesaid term at a price to be determined by three competent and qualified real estate appraisers, one of whom shall be appointed by the lessor, one of whom shall be chosen and appointed by the lessee, or his assigns, and the third of whom shall be chosen and selected by the two appointed by seller and purchaser. In the event lessee exercises this option, then all monthly rentals paid by purchaser or his assigns shall be deducted from the purchase price determined by the three appraisers above mentioned. Each party to this agreement shall pay one-half (1/2) of the cost of said appraisal. As a condition precedent to the exercise of this option, the lessee shall either pay in full the promissory note to Charles H. Thompson, of even date, in the principal amount of Twenty-five Thousand Dollars ($25,000.00), or give security for the balance due on said note."

The lease with option was executed. In 1962 Mr. Thompson resigned as guardian, and Mrs. Webb was

appointed successor guardian in his place. The lessee, Memory Chapel, Inc., has paid the rental and continued the lease in effect. Shortly after the successor guardian was named, appellants notified both the original and successor guardians that they desired to exercise the option, and requested Mrs. Webb to name a competent and qualified real estate appraiser to determine the price to be paid for the property in accordance with paragraph 8 of the lease. She declined to do so, and appellants brought this suit for specific performance.

At the hearing Mr. Thompson, called as an adverse witness, said the balance of the debt due on the note from complainants to him, referred to in the last sentence of paragraph 8, was less than $2,000. Complainants offered to pay this debt when they elected to exercise the option. Defendants offered to prove by this witness that the present fair market value of the property was $120,000, but the court sustained objections to that. Complainants' president said they were ready and able to comply with the terms of the lease and the option agreement. Defendants offered two real estate experts, who, respectively, would testify that the present value of the property was $95,200 and $100,000. Objections were sustained to this evidence. The new chancellor found that the court had no power to authorize the granting of an option of this type along with the lease, and could not delegate its duty to determine value to appraisers to be appointed by the lessee and the guardian. Hence the option clause was invalid, and complainants were not entitled to specific performance. However, the lease otherwise was valid.

There is no statute granting the chancery court power to authorize a guardian to execute for his ward an option to purchase along with the lease. Section 414, Mississippi Code 1942, Rec., permits a surface lease for a period not to exceed six years. But it says nothing about an option to purchase, or a further provision for

credit of rentals paid on the purchase price. Section 419 authorizes the sale by guardian of the ward's interest, upon approval of the chancery court, if such interest will be promoted by sale, and grants the court power to prescribe the terms and conditions of the sale. See Code Secs. 416, 439. Section 1389 gives the chancery court power to authorize a sale or lease of a ward's real property at private sale, ''under such terms and conditions as the chancellor may impose''; and if the terms are made certain by order, a confirmation decree is not necessary. However, the power to authorize a lease on terms and conditions prescribed by the court does not encompass, we think, a lease with option to purchase, with credit on the subsequent purchase price of interim rental payments. In brief, there is no statute granting the chancery court power to authorize an option to purchase a ward's real property as part of a surface lease, with purchase credit for interim rentals.

██ █ Sales and leases under statutes authorizing guardians to sell or lease the real estate of their wards must be for purposes and situations intended by or specified in the statute. They must comply with the requirements and limitations of the statute. Its provisions should authorize with reasonable clarity the particular type of contract or conveyance. 39 C.J.S., Guardian and Ward, Sec. 82(a)(2). Further, the decree must comply with the statutory limitations and requirements. Ibid., Sec. 118. Although an act granting the court authority to authorize a guardian's sale or lease of his ward's realty should not be strictly construed, there must be a reasonable basis for interpreting it so as to warrant the particular order. 25 Am. Jur., Guardian and Ward, Secs. 124, 125. An incompetent's property can be validly disposed of only in conformity with statutory provisions.

██ █ The chancery court has the duty to see that the price at the time of sale is fair and reasonable.

The 1959 decree in effect waived this duty of the court, and attempted to delegate it to appraisers appointed by the parties, although this was a non-delegable duty, for determining the fair market value at the time of sale. Moreover, the result of paragraph 8 is that the ward would not receive the fair market value of the property in the event appellants decide to purchase it. She would receive only its assumed market value, determined by private appraisers, less all rentals paid by appellants prior to the election to purchase. At a rental of $600 per month from October 23, 1959, this discount would now be in excess of $30,000. Hence the purchase price under the option would not be the fair market value at the time the option is exercised. Moreover, the option confers on appellants alone the right to determine whether they should buy. Whether it would be advantageous to the ward's estate to sell at the time of election to buy could not be considered. If the value should increase, appellants could buy with all rentals credited against the price; if the value should decline, they would be free not to purchase. Their self interest would dictate purchase only if advantageous to them, and consequently disadvantageous to the ward. In brief, paragraph 8 permits appellants to speculate, without risk, on the value of the ward's real estate.

 █ Appellants seek to bind the court by requiring performance of a guardian's contract whether or not the court at the time of conveyance determines the sale is fair and equitable. This is contrary to public policy, because chancery courts must be free to control the estates of incompetents in such manner as they deem is advantageous to wards. Appellants argue that the court could review the price fixed by appraisers before confirming any sale. Yet paragraph 8 makes no such provision, and the option agreement either is valid as written, or invalid.

 █ In summary, the chancery court was not authorized to approve the option agreement in paragraph

8. In addition, even if there were a general grant of power to the court to authorize an option, the agreement as executed was inequitable and unfair to the ward. The trial court was warranted in so findings, and in denying specific performance, which is not a matter of right, but of sound legal discretion. It will not be employed where the contract is legally valid but affected with unfairness and impropriety. Pickett v. Boutwell, 240 Miss. 18, 125 So. 2d 822 (1961).

██ █ Paragraph 8 of the lease illustrates the reasons for the general reluctance of courts to authorize the guardian of an incompetent to make an executory contract for the sale of the incompetent's real estate. Morrison v. Kinstra, 55 Miss. 71 (1877); Emery v. Goff, 198 Okla. 534, 180 P. 2d 175, 171 A.L.R. 457 (1947).

Apparently the only case on this particular point (power of a guardian to execute a lease with an option to purchase at a subsequently determined appraised value by private appraisers, under general statutes), is Storthz v. Sanger, 108 Ark. 154, 156 S.W. 1020 (1913). The option clause in that lease was similar to paragraph 8, except there was no provision for credit on the purchase price of interim rentals. The court held the option was beyond the power of the probate court, which, in dealing with the property of infants and insane persons, was confined to the limits prescribed by statute. There was no authority for the option, which was "entirely executory". Legislative warrant to mortgage, lease, or sell did not include the power "to enter into an executory contract giving a person an option to purchase". Since the option clause was void, the trial court "possessed no power to direct the guardian to execute it". However, the remainder of the lease was valid. State of Arkansas ex rel Peevy v. Cate, 371 S.W. 2d 541 (Ark. 1963), in a different but related context, cited with approval and followed *Sanger*.

A New York case held that a particular New York statute authorized a committee for an incompetent to

make a lease containing an option to purchase. In re Benedict, 239 N. Y. 440, 147 N.E. 59 (1925). The statutory terms were substantially different from those in this state. The order authorizing the lease with option found the value of the property at the time of the order, and further required the guardian to make a report of the proposed sale when and if the option was exercised. Moreover, it contained no provision for credit on the purchase price of interim rentals. Hence *Benedict* is not in point, because of the terms of that statute, provisions of the option, and the method for judicial supervision of its exercise. See 44 C.J.S., Insane Persons, Sec. 93(b), p. 254.

The facts in *Sanger* are substantially similar to those of the instant case, and it reached the result which is in accord with our view. An additional factor is that *Sanger* did not involve specific performance, whereas the present case does, with the increased area of discretion in the trial court to deny it, where to grant such relief would be inequitable and unfair to the ward. Somewhat analogous is the established rule that a grant of power to a trustee to sell or lease real property, or to do both, does not ordinarily give him the power to execute an option to purchase the property. Anno., 83 A.L.R. 2d 1310, 1312 (1962); 1 A.L.I., Rest. Trusts 2d, Sec. 190, Comment k, p. 422.

Affirmed.

*Lee, C. J., and Gillespie, Brady and Patterson, JJ.,* concur.