HELENA F. NELSON & another,[1] guardians, vs. HENRY
L. MAIORANA & another.[2]

Norfolk. March 7, 1985. — June 5, 1985.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Guardian*, Sale of real property. *Option*.

In an action by guardians seeking declaratory relief and instructions as to
whether they were required to sell their ward's real estate for a price
they deemed inadequate under a lease, containing an option to purchase,
which had been granted by the guardians and approved by a Probate
Court judge some fifteen years earlier, summary judgment for the defend-
ants was not warranted where the record did not show that the judge
who had earlier approved the lease had specifically considered the option
provision and had concluded that, for special reasons, the option was
necessary so that the guardians could make the best possible arrangement
concerning their ward's property, and where, absent such showing, the
judge in the present action had a duty under G. L. c. 202, § 14, to
decide whether the price offered was advantageous and in the interest
of the ward. [89-91]

CIVIL ACTION commenced in the Norfolk Division of the
Probate and Family Court Department on October 21, 1983.

The case was heard by *Edmund V. Keville*, J., on a motion
for summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Harold W. Potter, Jr.*, for the plaintiffs.

*John T. Gaffney (John T. Gaffney, Jr.*, with him) for the
defendants.

WILKINS, J. On October 31, 1968, the plaintiffs, as guard-
ians, entered into a lease to the defendants of premises on
Chestnut Street in Needham owned by their ward, George

---

[1] Thomas Marsilli.

[2] Thomas P. Maiorana.

Marsilli. The lease provided for a term of five years at an annual rent of $6,000, commencing November 1, 1968, with an option in the lessees to extend the lease for additional terms.[3] The lease also granted the defendants an option to purchase the premises "at any time before the expiration of the lease or. any extensions thereof," if the defendants were not in default. If the purchase price could not be agreed upon, each party was to name an appraiser, and the two named appraisers would select a third appraiser, to establish the purchase price. The parties acknowledge that the lease, containing the option to purchase, was authorized by an October 11, 1968, decree entered by a judge of the Probate and Family Court for Norfolk County.

On June 27, 1983, prior to the end of the third five-year term under the lease, the defendants notified the plaintiffs that they were exercising their option to purchase the premises. Because the parties could not agree on a purchase price, the appraisal procedure set out in the lease was followed. In late September, 1983, the appraisers determined that the fair market value of the premises was $215,000.

The plaintiffs believed that a sale price of $215,000 was inadequate and commenced this proceeding shortly thereafter, seeking instructions and declaratory relief. A judge of the Probate and Family Court allowed the defendants' motion for summary judgment, ordered the plaintiffs to convey the premises to the defendants for $215,000, and directed the defendants to pay rent from November 1, 1983, at the annual rate of $25,500, as determined by the appraisers. The plaintiffs appealed, and we transferred the appeal here on our own motion.

From the plaintiffs' memorandum and the affidavits before the motion judge, it is apparent that the plaintiffs argued to

---

[3] The rent for the first five-year additional term was also $6,000 a year. The rent for the second additional five-year term was $7,200 a year. The rent for terms thereafter was to be determined by appraisal if the parties could not agree. The lessees were obliged to pay any increase in local taxes above the amount shown on the 1968 local real estate tax bill.

him a challenge only to the appraisers' decision that the fair market value of the premises was $215,000. On this question, the affidavits and other material before the judge presented no dispute of material fact requiring denial of the defendants' motion for summary judgment. Although a dispute was shown as to the fair market value of the premises, there was nothing presented to warrant a finding of fraud, corruption, dishonesty, or bad faith in the appraisal process or decision. See *Eliot* v. *Coulter*, 322 Mass. 86, 91 (1947). Only in such circumstances would a judge be justified in upsetting the determination of appraisers selected by agreement to resolve a dispute between the parties.

In this court, the plaintiffs have challenged for the first time the validity of the option provision. If we were not concerned with the interests of a ward in this case, we might well conclude that this challenge comes too late when it is raised first, in any significant way, on appeal. It is true that the plaintiffs' complaint did allege that the appraisal price was not the best obtainable price in the marketplace and that the ward's best interest was to obtain the best possible price. The plaintiffs presented affidavits which tended to support the fact that the fair market value of the premises exceeded $215,000. In their prayers for relief the plaintiffs asked for instructions "as to whether or not they are bound by the terms of said Lease and by said appraisal to sell said property to the Defendants for $215,000." It is clear, however, that the plaintiffs made no argument to the motion judge that the option was unenforceable or that, on equitable principles, specific performance should not be ordered at the appraisal price. At no stage, even before us, have the plaintiffs faced the question whether the 1968 court decree approving the lease, with the option agreement, has binding effect, unless and until it may be vacated (at least, as to the option) as being in excess of the court's authority. See *Mitchell* v. *Mitchell*, 312 Mass. 154, 163-164 (1942). On the other hand, the plaintiffs' request for instructions was not answered explicitly by the judgment and was answered only implicitly to the effect that the plaintiffs were bound by the option agreement. Our concern for the interests of the ward

prompts us to consider the question of the enforceability of the option provision. We base our right to do so on our general supervisory authority over the courts of the Commonwealth.

We do not know the reasoning of the motion judge in granting summary judgment. If the motion judge concluded that summary judgment should be entered for the defendants because there was no disputed material fact on the question whether, under G. L. c. 202, § 14, the sale price of $215,000 was "advantageous" and "the interests of all parties [would] be promoted by an acceptance" of the offer, he would have been in error. While, in the circumstances, the appraisers' conclusions were themselves unassailable, there remained a demonstrated dispute of material fact whether $215,000 was the fair market value of the property and whether, therefore, a sale at that price would be "advantageous" to the ward. If the motion judge concluded that summary judgment for the defendants was required because the terms of the option agreement, approved by court decree in 1968, should be carried out, even if the sale price may not have been advantageous to the ward, the judge was giving effect to an agreement and decree that purported to take from him the duty then to decide, as G. L. c. 202, § 14, requires, whether the price ("offer") was advantageous and the proposed transaction was in the interests of all parties, including the ward.

In general, option agreements should not be included in leases made by guardians on behalf of wards, even if there is court approval of the agreement and the option price is not then fixed but rather is to be determined by appraisers at the time the option is exercised. See *Thompson Funeral Home* v. *Thompson*, 249 Miss. 472, 478-480 (1964); *Storthz* v. *Sanger*, 108 Ark. 154, 160 (1913). Cf. *Guardianship of Sorum*, 273 N.W.2d 710, 711-712 (N.D. 1979) (option price fixed in the lease). A fiduciary's authority to sell real estate does not normally include authority to grant an option to purchase it. See 3 A. Scott, Trusts § 190.8 (3d ed. 1967); Restatement (Second) of Trusts § 190 comment k (1959).

No statute explicitly authorizes a Probate Court judge to approve an option agreement concerning a ward's real estate.

We acknowledge, however, that in special circumstances, where inclusion of an option agreement in a lease is clearly necessary to make the most advantageous arrangement for a ward, an option to purchase a ward's real estate could be granted by a guardian and approved by a judge. See *Union Camp Corp.* v. *Youmans,* 227 Ga. 687, 696 (1971) (without the option to purchase, lease could not have been negotiated and ward would probably have lost her land). Unless, however, the record shows that a judge approved an option agreement in such special circumstances, a Probate Court judge considering the enforceability of the option agreement at the time of its exercise should carry out his statutory duty under G. L. c. 202, § 14, concerning the price at which a ward's real estate may be sold at private sale, and should not give binding effect to the option agreement.

The record before us does not show that the judge who approved the 1968 lease gave focused attention to the option provision in the lease and hence concluded that, for special reasons, the option was necessary so that the guardians could make the best possible arrangement concerning the ward's property. We reject the contention that general judicial approval in 1968 of a lease containing an option to purchase alone relieves a judge of a duty to exercise those statutory obligations imposed on him concerning the purchase price of a ward's property when the option is exercised fifteen years later. Thus, summary judgment for the defendants was not warranted.

Summary judgment for the defendants is vacated, and the case is remanded for further proceedings.

*So ordered.*