# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CT-01521-SCT

*COMMUNITY BANK OF MISSISSIPPI AND*
*RAYMON McALPIN a/k/a RAYMOND McALPIN*

*v.*

*DONNA STUCKEY*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 08/06/2008 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MANDIE B. ROBINSON |
| | ALAN W. PERRY |
| | J. CHASE BRYAN |
| | CLAY W. SLAY |
| | G. DAVID GARNER |
| ATTORNEYS FOR APPELLEE: | DAVID SHOEMAKE |
| | A. REGNAL BLACKLEDGE |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED.  THE JUDGMENT OF THE COVINGTON COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED - 12/09/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Community Bank filed suit against Donna Stuckey, alleging that she had defaulted

on a loan for a cattle operation run by Donna and her husband, Mike.  Donna alleged that her

signature was forged on this cattle-business loan and on documents related to several other

cattle-business loans as well. As a separate matter, Donna alleged that the Bank had made certain misrepresentations concerning an eleven-acre parcel for which the Stuckeys had executed a deed of trust. When the Bank sought to compel arbitration, Donna alleged that her signatures on the arbitration agreements accompanying the cattle-business loans and the eleven-acre deed of trust were forgeries. The trial court found no convincing evidence that Donna had signed any of the pertinent arbitration agreements; therefore, it refused to compel arbitration. We find that the trial court's findings are not clearly erroneous. Furthermore, because of the Bank's impropriety, we refuse even to consider binding Donna to arbitration as a third-party beneficiary or based on the principle of equitable estoppel. We thus reverse the Court of Appeals and reinstate and affirm the trial court's judgment.

### FACTS & PROCEDURAL HISTORY

¶2.     Mike and Donna Stuckey operated a cattle business named Stuckey Farms. According to Donna, Mike befriended Raymond McAlpin, a loan officer at the Community Bank in Raleigh, Mississippi, and made McAlpin a business partner.

¶3.     While McAlpin made numerous loans to the Stuckeys during the time of his partnership, this dispute concerns only four loans. Three of the loans concerned the Stuckeys' cattle business. The fourth involved a deed of trust on an eleven-acre parcel. The Stuckeys executed the deed of trust in the name of Appleridge Estates, LLC, and hoped to develop the property for residential use. All four loans included an arbitration agreement.

¶4.     In June 2006, Community Bank filed a replevin suit to obtain possession of personal property offered by the Stuckeys as collateral for several of the cattle-business loans. The

2

Bank alleged that Mike had defaulted on six cattle-business loans, and that Donna had defaulted on a June 16, 2003, cattle-business loan, numbered 6803148.

¶5.    Mike and Donna each filed separate answers and counterclaims. In her counterclaim, Donna alleged forgery, conversion, misrepresentation, breach of fiduciary duties, breach of the duty of good faith and fair dealing, breach of warranty, intentional or negligent infliction of emotional distress, damage to credit reputation, and gross negligence.

¶6.    Donna's counterclaim made two separate allegations. First, she contended that McAlpin and the Bank had forged her signature on the June 2003 cattle-business loan, and that her signature had been forged on two other cattle-business loans as well, one dated April 2004 and another dated February 2003. Second, Donna asserted that McAlpin had made misrepresentations to induce the Stuckeys to execute the Appleridge Estates deed of trust.

¶7.    The Bank responded with a motion to compel arbitration. Donna opposed this motion, insisting that she had never signed any arbitration agreement. Donna maintained that she went to the Bank only once, on May 12, 2003, to sign the Appleridge Estates deed of trust. She freely admitted signing the deed of trust, but she adamantly denied signing any arbitration agreement attached to that deed of trust.

¶8.    The Bank and Donna each obtained a handwriting expert. Their experts' divergent opinions are discussed later in the opinion.

¶9.    The trial court ordered Mike's claims to arbitration, but refused to compel arbitration as to Donna. The trial court concluded "[t]hat there does not exist convincing evidence that Donna . . . executed any of the subject arbitration agreements . . . ." It further found that

Donna had no interest in the Stuckey Farms cattle operation, and therefore, she was not a third-party beneficiary of the cattle-business loans.

¶10. The Court of Appeals reversed and remanded the judgment of the trial court. It found that Donna was bound to arbitration as a third-party beneficiary; hence, it was unnecessary to determine whether she actually had signed any of the arbitration agreements. The Court of Appeals further found that Donna was equitably estopped from asserting claims based on the loan documents while simultaneously claiming that she was not bound by the arbitration provisions in those same documents.

¶11. Donna, aggrieved by the Court of Appeals' decision, filed this petition for writ of certiorari, which we granted.

## DISCUSSION

¶12. We review the denial of a motion to compel arbitration de novo. ***United Credit Corp. v. Hubbard***, 905 So. 2d 1176, 1777 (Miss. 2004).

> **I.** **Whether Donna signed an arbitration agreement attached to the Appleridge Estates deed of trust or the June 2003 cattle-business loan.**

¶13. By alleging that she never signed any arbitration agreement, Donna challenges the existence of a valid agreement to arbitrate. The trial court made a factual finding "[t]hat there does not exist convincing evidence that Donna . . . executed any of the subject arbitration agreements . . . ." We must accept a trial court's factual findings unless they are "clearly erroneous," i.e., evidence exists to support the findings, but after reviewing the entire evidence, we are left with a "definite and firm conviction that a mistake has been made."

4

*UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc.*, 525 So. 2d 746, 753-54 (Miss. 1987) (citations omitted).

### A. The Appleridge Estates deed of trust

¶14.    Though some evidence suggests that Donna signed a version of an arbitration agreement for the Appleridge Estates deed of trust, we are not firmly convinced that the trial court made a mistake in concluding that she had not signed any arbitration agreement.

¶15.    As it turns out, there are two different arbitration agreements for the Appleridge Estates deed of trust, both dated May 12, 2003.  Each agreement refers to the same loan number, bears the same date, and obligates the same amount of money to the borrowers.  Yet there are glaring differences between the two documents.  To add to the confusion, the two experts based their opinions on different versions.

¶16.    The Bank's expert, Grant Sperry, referenced an arbitration agreement Bates-stamped ORG-000098 and ORG-000099.  This particular agreement was signed by Mike, Donna, and McAlpin.  The signature line lists Donna as "Vice President" and "Member" of Appleridge Estates, LLC.  The title "Vice President," however, is manually crossed out with Donna's initials alongside.  Sperry concluded to a reasonable degree of certainty that Donna had signed this particular document, referred to here as the "Sperry agreement."

¶17.    In contrast to the "Sperry agreement," the agreement to which Donna's expert, Robert Foley, referred is Bates-stamped ORG-0000101 and ORG-0000102.  It was signed by Mike, Donna, and an individual apparently named Dennis, whose last name is undiscernible.  One signature line merely lists Donna's name, while the other line lists her as "Member" of

Appleridge Estates, LLC. Foley found a "strong probability" that Donna had not signed this document, referred to here as the "Foley agreement."

¶18. Sperry and Foley thus rendered opinions based on two different, May 12, 2003, arbitration agreements. It is unclear whether either expert examined the version referenced by the other.

¶19. In her sworn affidavit and in her deposition testimony, Donna denied signing any arbitration agreement on May 12, 2003. The Bank confronted Donna in her deposition about the striking similarities between her actual signature and the signature on page ORG-000099 of the Sperry agreement. She answered, "I did not sign that. If a handwriting expert says I did, then I'm wrong, but I did not sign that. . . . [F]or all I know, they traced it."

¶20. Because of the evidentiary morass of different versions of the same document together with conflicting expert and deposition testimony, we cannot say that the trial court clearly erred in finding no convincing evidence that Donna had signed any arbitration agreement pertaining to the Appleridge Estates deed of trust.

### B. The June 2003 cattle-business loan

¶21. As with the arbitration agreements for the Appleridge Estates deed of trust, it appears once again that Donna's and the Bank's respective experts did not review the same document and that they based their opinions on two different documents.

¶22. Donna's expert, Foley, concluded that the arbitration agreement for the June 2003 cattle-business loan, numbered 6803148, was forged by Donna's husband, Mike. The Bank's expert, Sperry, countered that Donna had signed an arbitration agreement dated June 16, 2003. But the agreement that Sperry referenced pertained to a different loan—loan number

6803091. He provided no opinion as to any arbitration agreement associated with the June 2003 cattle-business loan, numbered 6803148, which is the loan that is relevant to this case.

¶23. We cannot say that the trial court clearly erred in finding that Donna did not sign any arbitration agreement for the June 2003 cattle-business loan.

## II. Whether Donna should be bound to arbitration as a third-party beneficiary or based on the principle of equitable estoppel.

¶24. Though the Bank contends that Donna actually signed an arbitration agreement for the Appleridge Estates deed of trust and for the June 2003 cattle-business loan, it argues, alternatively, that Donna is bound to arbitration as a third-party beneficiary or based on the principle of equitable estoppel. Moreover, the Bank does not seem to challenge Donna's allegations that her signature was forged to the arbitration agreements for the April 2004 and February 2003 loans. The Bank instead maintains that Donna is bound to arbitrate any claims with respect to these particular loans because of her third-party-beneficiary status or based on the principle of equitable estoppel.

¶25. We have recognized that "a signatory may enforce an arbitration agreement against a non-signatory if the non-signatory is a third-party beneficiary . . . ." *Qualcomm v. American Wireless Group*, 980 So. 2d 261, 269 (Miss. 2007) (citing *Adams v. Greenpoint Credit, LLC*, 943 So. 2d 703, 708 (Miss. 2006)). Equitable estoppel, on the other hand, prevents a party from embracing the benefits of a contract while simultaneously trying to avoid its burdens. *See Terminix Int'l, Inc. v. Rice*, 904 So. 2d 1051, 1058 (Miss. 2004) (quoting *Washington Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 268 (5th Cir. 2004)).

7

We elect not to address or apply either theory in this case, however, because of the impropriety involved in this case.

¶26. The Bank's motion to compel arbitration is, in essence, a request for specific performance. *E.g.*, **Cost Bros., Inc. v. Travelers Indem. Co.**, 760 F.2d 58, 59 n.1 (3d Cir. 1985). It is a fundamental principle of law that he who seeks equitable relief, such as specific performance, must do so with clean hands. *E.g.*, **Pickett v. Boutwell**, 240 Miss. 18, 22, 125 So. 2d 822, 823 (Miss. 1961).

¶27. The Bank's hands are tainted here due to several apparently uncontested forgeries. Donna alleges that on several occasions, Mike forged her signature at the behest of McAlpin, an employee of the Bank. It appears that others forged Donna's signature as well. Regardless of who the forger might have been, we will not compel arbitration based on third-party-beneficiary status or equitable estoppel where the movant has encouraged or engaged in forging the nonmovant's signature. Accordingly, we find that Donna is not bound to arbitrate her claims as a third-party beneficiary or based on the principle of equitable estoppel.

## CONCLUSION

¶28. We find that the trial court did not clearly err in finding no convincing evidence that Donna had signed any of the subject arbitration agreements. And because the Bank comes before us with unclean hands, we refuse to consider binding her to arbitration as a third-party beneficiary or based on the principle of equitable estoppel. We thus reverse the Court of Appeals and reinstate and affirm the trial court's refusal to compel arbitration.

¶29. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE COVINGTON COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED.**

**CARLSON AND GRAVES, P.JJ., DICKINSON, LAMAR, KITCHENS AND CHANDLER, JJ., CONCUR. RANDOLPH AND PIERCE, JJ., NOT PARTICIPATING.**