Cite as 2025 Ark. App. 602

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-24-65

| | |
|---|---|
| EDWARD PAUL "BO" CHEVALLIER, ERNEST RAY BURNETT, PATRICIA CLARY, JAMES FLOYD, AND JONATHAN PHILLIPS, ALL INDIVIDUALLY AND AS COMMISSIONERS OF THE MUNICIPAL RECREATIONAL FACILITIES IMPROVEMENT DISTRICT; MCLEE JAMES, INDIVIDUALLY AND AS COMMISSIONER OF THE MUNICIPAL STREET IMPROVEMENT DISTRICT; AND MICHELLE SANDERS-GRABOWSKI<br><br>APPELLANTS | Opinion Delivered December 10, 2025<br><br>APPEAL FROM THE IZARD COUNTY CIRCUIT COURT<br>[NOS. 33CV-23-30 AND 33CV-23-32]<br><br>HONORABLE HOLLY MEYER, JUDGE<br><br>AFFIRMED |

V.

DUANE C. DELAIR, INDIVIDUALLY AND AS MAYOR OF THE CITY OF HORSESHOE BEND, ARKANSAS; CHARLIE MCDANIEL, INDIVIDUALLY AND AS ADMINISTRATOR OF THE MUNICIPAL RECREATIONAL FACILITIES IMPROVEMENT DISTRICT; AND DAVID DELVECCHIO, INDIVIDUALLY AND AS ADMINISTRATOR OF THE MUNICIPAL STREET IMPROVEMENT DISTRICT AND CROWN STREET IMPROVEMENT DISTRICT

APPELLEES

CASEY R. TUCKER, Judge

Appellants appeal from an order of the Izard County Circuit Court that resolved competing petitions for declaratory judgment relating to the Improvement District Transparency Act's annual reporting requirements. After a bench trial, the circuit court found that (1) the 2021 fiscal year annual reports filed by two improvement districts within the City of Horseshoe Bend—the Municipal Recreational Facilities Improvement District ("MRID") and the Municipal Street Improvement District ("MSID")—did not substantially comply with the statutory reporting requirements; and (2) the mayor's subsequent appointment of administrators of the MRID and the MSID was appropriate and in compliance with the statute. Appellants challenge these findings on appeal. We affirm.

In 1980, the MRID was created by a City of Horseshoe Bend ordinance to hold, maintain, and improve certain land and recreational facilities in the city, including several lakes, an eighteen-hole golf course, clubhouse, swimming pool, and related properties. Three commissioners appointed by the city council compose the board of improvement for the MRID. The MSID was established by a city ordinance for the purpose of paving streets within the district. Three commissioners appointed by the city council compose the board of improvement for the MSID. The operations of both the MRID and the MSID are funded by assessments collected from property owners within the districts.

In 2011, the General Assembly enacted the Improvement District Transparency Act, codified at Arkansas Code Annotated sections 14-86-2101 to -2105 (Supp. 2025). The Act,

2

as amended in 2021,[1] requires an improvement district that uses or intends to use the county collector for collection of improvement assessments to file an annual report with the county clerk in any county in which a portion of the improvement district is located on April 1 of each year. Ark. Code Ann. § 14-86-2102(a)(1)(A). This report "shall be available for inspection and copying by assessed landowners" in the improvement district. *Id.* § 14-86-2102(a)(1)(B).

The statute provides that the annual report "shall contain the following information" for the preceding fiscal year:

(A) Identification of the primary statute under which the improvement district was formed;

(B) A general statement of the purpose of the improvement district;

(C) A list of contracts, the identity of the parties to the contracts, and the obligations of the improvement district;

(D)(i) Any indebtedness, including bonded indebtedness, and the reason for the indebtedness.

(ii) The stated payout or maturity date of the indebtedness, if any, shall be included;

---

[1]The Improvement District Transparency Act was amended by Act 359 of 2021, effective July 28, 2021. The 2021 amendment, as relevant here, (1) changed the annual report filing deadline from March 1 to April 1 of each year, (2) added a requirement that the annual report include "names, phone numbers, addresses, and email addresses" for improvement district directors or commissioners and officers, and (3) removed language mandating a monetary fine for each offense of noncompliance with section 14-86-2102(a)'s requirements and inserted the current language in section 14-86-2102(b) mandating that the county judge or mayor appoint an administrator to act as the board of commissioners if an improvement district does not comply with subsection (a).

(E) The total existing delinquent assessments and the party responsible for the collection;

(F) Identification of the improvement district directors or commissioners and improvement district officers, if any, and contact information, including names, phone numbers, addresses, and email addresses;

(G) The date, time, and location for any scheduled meeting of the improvement district for the current year;

(H) The contact information for the improvement district assessor, including name, phone number, address, and email address;

(I) Information concerning to whom the county treasurer is to pay improvement district assessments;

(J) An explanation of the statutory penalties, interest, and costs;

(K) The method used to compute improvement district assessments; and

(L) A statement itemizing the income and expenditures of the improvement district, including a statement of fund and account balances of the improvement district for the most recent fiscal year.

*Id.* § 14-86-2102(a)(2)(A)–(L).

The statute further provides that "[t]he county judge of the county or the mayor of the municipality in which a portion of an improvement district . . . is located shall appoint an administrator of the improvement district . . . to act as the board of commissioners if the improvement district . . . does not comply with subsection (a) of this section." *Id.* § 14-86-2102(b)(1). An administrator appointed under subdivision (b)(1) of this section

(A) Is subject to the applicable laws of the improvement district;

(B) Shall provide evidence of his or her economic viability;

4

(C) Shall receive such payment for his or her services as the county judge or the mayor may allow;

(D) Shall serve at the pleasure of the county judge or mayor and until such time as the county judge or mayor determines the administrator is no longer necessary; and

(E) Is not liable for damages in connection with the improvement district unless the administrator acted with corrupt and malicious intent.

*Id.* § 14-86-2102(b)(2)(A)–(E).

In accordance with section 14-86-2102(a), on March 9, 2022, both the MRID and the MSID filed annual reports for fiscal year 2021 with the clerk of Izard County.

On January 1, 2023, appellee Duane DeLair took office as the newly elected mayor of the City of Horseshoe Bend. Before assuming office, DeLair had reviewed and discovered several deficiencies in the MRID's and the MSID's 2021 annual reports. Accordingly, shortly after he began his term as mayor, DeLair issued letters appointing appellee Charlie McDaniel as an administrator of the MRID and appellee David Delvecchio as an administrator of the MSID to act as the boards of commissioners of the districts pursuant to section 14-86-2102(b).

After McDaniel was denied access to the MRID's premises and financial accounts and records, DeLair and McDaniel filed an action in the Izard County Circuit Court, case No. 33CV-23-30, seeking a declaratory judgment that (1) the MRID failed to comply with the reporting requirements of section 14-86-2102; (2) DeLair's appointment of McDaniel as administrator of the MRID is lawful; and (3) McDaniel is entitled to access the MRID's accounts, records, and office to discharge his duties as administrator. Among other

deficiencies, the petition alleged that the MRID's 2021 fiscal year annual report (1) failed to disclose several contracts; (2) failed to provide a reason for bond indebtedness listed as an "FNBC line of credit" in the amount of $174,264.26; (3) failed to properly report a "Note Payable" to First National Bank of Izard County in the amount of $3,178.56; (4) failed to correctly identify the then acting Izard County tax collector in 2021; and (5) failed to include physical addresses and email addresses for the commissioners.

The commissioners of the MRID counterclaimed for a declaratory judgment that (1) the MRID's 2021 annual report complied with section 14-86-2102(a); (2) DeLair's appointment of McDaniel failed to comply with statutory requirements; and (3) the MRID commissioners remain appointed and in place. Specifically, they alleged that McDaniel "did not provide evidence of his economic viability between January 1, 2023, and January 4 or 5, 2023, as applicable, or at any times relevant to this counterclaim, as required by Arkansas Code Annotated § 14-86-2102(b)."

Separately, commissioners of both the MRID and the MSID and appellee Michelle Sanders-Grabowski, a citizen taxpayer, filed an action in the Izard County Circuit Court, case No. 33CV-23-32, seeking a declaratory judgment that (1) the annual reports filed by both the MRID and the MSID complied with section 14-86-2102(a); (2) DeLair failed to comply with section 14-86-2102(b) in his appointments of both McDaniel and Delvecchio as administrators of the MRID and the MSID; and (3) the previously appointed commissioners of the districts remain in place. Because the complaint asserted largely the same allegations as the MRID commissioners' counterclaim in case No. 33CV-23-30, the

circuit court ordered the separate action filed in case No. 33CV-23-32 consolidated with case

No. 33CV-23-30.[2]

At a bench trial on October 18, 2023, the circuit court received documentary

evidence and heard testimony from eleven witnesses. Both the MRID's and the MSID's 2021

fiscal year annual reports were introduced. Under the section "Contract and Obligations,"

the MRID's report lists the following:

- PNC Equipment Finance: Toro Reelmaster 5510 and Toro blow force blower - $4288.51 remaining until 4/1/2022

- Univest financial: Ventrac 4500 tractor finish deck, contour deck, rough cut deck, and stump grinder - $30184.35 remaining until 5/31/2025

- Bottom Line Solutions (Chuck Mcneight) Contract: $13,800 per year through July 31, 2026

- Josh Jackson Contract: $37,000 + 4% increase through Oct 15, 2026

- Spartan Mower: $10057.65 remaining until 10/31/2024

Under the section "Current Bond Indebtedness," the report lists "FNBC line of credit" in

the amount of "$174264.26" with a payout date or maturity date of February 1, 2027.

---

[2]Appellees in both case Nos. 33CV-23-30 and 33CV-23-32 also asserted claims of civil-rights violations related to DeLair's "removal" of the commissioners. The circuit court's findings as to the civil-rights claims, however, are not challenged in this appeal and therefore are not properly before the court. We note, in any case, that the issues presented in this appeal do not concern removal of commissioners as contemplated by statutory law applicable to municipal improvement districts. *See* Ark. Code Ann. § 14-88-305 (Supp. 2025) (providing procedure for removal of municipal board of improvement or any member of the board).

7

A separate "Statement of Assets, Liabilities and Equity" attached to the report includes "Note Payable-FNBIC" in the amount of $3,178.56 and "Note Payable-FNBC 540681" in the amount of $174,264.26 under "Long-Term Liabilities." An attached "Statement of Revenues and Expenses" includes the following: "Consulting Fees" in the amount of $18,500; "Contract Services" in the amount of $1,177.51; "Insurance-General" in the amount of $6,645.74; "Insurance-Group" in the amount of $18,569.58; "Lawn Care" in the amount of $4,300; "Lease Expense" in the amount of $48,637.79; "Legal and Accounting Services" in the amount of $9,125.19; "Maintenance Contracts" in the amount of $1,321; "Salaries-General" in the amount of $70,477.85; "Salaries-Maintenance" in the amount of $193,216.10; and "Salaries-Pro Shop" in the amount of $39,448.90. The annual report, however, contains no additional information relating to these itemized expenses.

Additionally, there was evidence that several contracts between the MRID and various individuals and entities were not disclosed in the MRID's 2021 annual report. These undisclosed contracts are summarized as follows:

- 2021 Annual Golf Course Management Consultation Contract

  - Jeff Klein d/b/a Specialized Outdoor Services, agreed to provide golf course management consultation services to Turkey Mountain Golf Course, operated by the MRID, in exchange for payment in a total amount of $4,800, payable bi-monthly beginning January 11, 2021, and ending the week of December 27, 2021.

- American Land Company Contract, executed March 9, 2004

- American Land Company agreed to assist in enforcing collection of delinquent improvement district taxes in exchange for the MRID's agreement to give American Land Company the exclusive right and option to purchase the MRID's interest in all or some of the delinquent properties on certain terms. The contract had an initial term of five years and automatically renewed annually, unless five years' written notice of intent to terminate the contract was given by either party.

- Horseshoe Club Association Contract, executed January 1, 2013

  - The MRID agreed to lease premises described as "The Loft" to the Horseshoe Club Association for the purpose of operating a "private club" for a period of ten years beginning on January 1, 2013, and ending on December 31, 2022, with an option to extend the lease for an additional period of five years. In exchange, the Horseshoe Club Association agreed to pay $100 a month for water, sewer, and trash pickup service and agreed to be responsible for maintenance of the interior of the premises.

- Contract for Employment, executed October 23, 2015

  - Josh Jackson agreed to provide services in the capacity of golf course superintendent to the MRID for the period beginning January 1, 2017, and ending January 1, 2026, for a total annual salary that cannot fall below $47,476.

- Turkey Mountain Essentials/Pro Shop Contract

  - Unsigned, written agreement in which the MRID agreed to lease premises described as "The Proshop" to Turkey Mountain Essentials for a period of ten years, beginning on March 1, 2019, and ending on February 28, 2029, in exchange for Turkey Mountain Essentials' payment of $100 a year for the term of the lease, for the purpose of carrying on the business of a "proshop" and related uses.

Josh Jackson, who was employed as the MRID's golf course superintendent, explained that he was responsible for preparing the MRID's annual report for fiscal year 2021. Additionally, he testified that he operated his personal business, a golf pro shop called Turkey Mountain Essentials, out of the MRID's clubhouse rent-free pursuant to a "verbal contract" with the MRID. According to Jackson, during 2021, when MRID employees performed work for Turkey Mountain Essentials, the MRID was never reimbursed for those MRID employees' services. Jackson also testified that his annual salary was $59,000 in 2021. He admitted that the above-listed contracts were not disclosed in the MRID's 2021 annual report.

As to the fiscal year 2021 annual report filed by the MSID, under the section "Contract and Obligations," the report states "NONE." A separate "Income Statement" attached to the report includes as an itemized expense "PAVING" in the amount of $288,150. McLee James, an MSID commissioner, testified at trial that the MSID has an "open bid" with Bookout to pave two miles of streets within the district each year. He confirmed that the MSID spent roughly $288,000 in 2021 on paving services pursuant to its contract with Bookout.

At the conclusion of the bench trial, the circuit court stated what it found to be the obvious purpose of the Improvement District Transparency Act—that is, to afford taxpayers transparency in the expenditures and business of improvement districts. Thus, the court explained, whether the annual reports in question comply with the statutory reporting requirements turns on whether the omissions or deficiencies in the reports are "material to

meeting that objective of transparency." Using this as a "measuring stick," the court ultimately concluded that some of the cited deficiencies chinned the bar of substantial compliance, and others did not. The court found, in relevant part, as follows:

7. The reports of the MRID and MSID substantially complied with subsections (a)(1)(A), and (a)(2)(A), (B), (E), (F), (G), (H), (I), (J), (K), and (L) of Arkansas Code Annotated § 14-86-2102. Omitting the email addresses and addresses of commissioners and indicating the previous tax collector by name are not material to the essence of the transparency act's reporting requirements. Disclosing personal phone numbers for those commissioners and the identity of the Izard County Tax Collector by office were sufficient and substantially compliant.

8. The Court finds the MSID's report falls short of substantial compliance with subsection (a)(2)(C) of Arkansas Code Annotated § 14-86-2102. The purpose of the MSID is to improve roads within its district. It has an open bid with a particular contractor for that work, and more than $280,000 was expended on that road work in 2021. The MSID listed "None" for a disclosure of its contract and obligations, instead of disclosing its open bid with a particular contractor for road work. Although the MSID's attached financial statement disclosed the amount it expended towards paving, that is not sufficient or substantially compliant with disclosing its lists of contracts, the identity of the parties to the contracts, and the obligations of the improvement district or protection district. The Court therefore finds DeLair's appointment of Delvecchio over the MSID was appropriate. The Court notes James and the other MSID Commissioners have remained in office and will continue to serve as Commissioners of the MSID until their terms expire, subject to other statutory restrictions and provisions. James's and Michelle Grabowski's complaint for a declaratory judgment as to the MSID and James's complaint for a civil rights violation as to the MSID are therefore denied and dismissed.

9. The Court finds the MRID's report falls short of substantial compliance with subsection (a)(2)(C) and (D) of Arkansas Code Annotated § 14-86-2102. The purpose of the MRID, in summary, is to maintain and improve certain recreational amenities. The MRID disclosed a number of long term employment agreements and equipment leases. The Court finds the disclosure of the "Josh Jackson Contract, $37,000 + 4% increase through Oct 15, 2026" is misleading because the 4% increase started in 2015 and a taxpayer

11

would need a copy of the contract to determine the salary in 2021. The MRID also failed to disclose a lease for the LOFT, which is a private club serving beverages pursuant to a license with the Arkansas Beverage Control Board in MRID-owned space; an oral agreement with Turkey Mountain Essentials to operate a pro shop in MRID-owned space without cost; a turf management contract with Specialized Outdoor Services; and a list of its golf course members and their levels of membership. Some of these items were disclosed in response to other requests by citizens under the Arkansas Freedom of Information Act, but it would be difficult for taxpayers in these districts to determine all of the contracts, parties to contracts, or obligations of the MRID based upon these omitted disclosures in the report. That is not sufficient or substantially compliant with disclosing the MRID's lists of contracts, the identity of the parties to the contracts, and the obligations of the improvement district or protection district. Separately, the MRID failed to disclose the reason for its line of credit with FNBC and the reason for and payout or maturity date for its debt with FNBIC, which also failed to substantially comply with the statute.

10. The Court therefore finds DeLair's appointment of McDaniel over the MRID was appropriate. The Court notes Chevallier, Floyd, Burnett, Phillips, and Clary have remained in office and will continue to serve as Commissioners of the MRID until their terms expire, subject to other statutory restrictions and provisions. Chevallier's and Michelle Grabowski's complaint for a declaratory judgment as to the MRID and Chevallier's complaint for a civil rights violation as to the MRID are therefore denied and dismissed. The MRID Commissioner's counterclaim for a declaratory judgment and civil rights violation are therefore denied and dismissed. DeLair's and McDaniel's complaint for the above declaratory judgment is granted.

11. The Court finds that Delvecchio and McDaniel met the statutory qualifications for appointment at the times of their appointments on January 4, 2023, for McDaniel and on January 5, 2023, for Delvecchio. Delvecchio and McDaniel are and were appointed to serve at the pleasure of DeLair on and after these dates until such time as DeLair determines a special administrator is no longer necessary for the MRID or MSID. The Commissioners of the MRID are hereby enjoined from preventing or interfering with McDaniel's access to the MRID's documents and premises. James, on behalf of the MSID, is hereby enjoined from preventing or interfering with Delvecchio's access to the MSID's documents and premises.

Appellants now appeal, raising two arguments for reversal: (1) the MRID's and the MSID's annual transparency reports substantially complied with Arkansas Code Annotated section 14-86-2102(a)(2); and (2) the administrators appointed by DeLair failed to provide proof of their economic viability before their appointments as administrators in violation of Arkansas Code Annotated section 14-86-2102(b)(2)(B).

The standard of review on appeal from a bench trial is whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *City of Rockport v. City of Malvern*, 2010 Ark. 449, at 6, 374 S.W.3d 660, 663. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed." *Id.* "Facts in dispute and determinations of credibility are solely within the province of the fact-finder." *Id.*

We review issues of statutory construction de novo. *Id.* We are not bound by the circuit court's decision, but "in the absence of a showing that the circuit court erred in its interpretation of the law, that interpretation will be accepted as correct on appeal." *Id.*

In their first point on appeal, appellants contend that the circuit court erred in finding that the MRID and the MSID failed to substantially comply with section 14-86-2102(a)(2) when their annual reports failed to disclose material information necessary for public transparency of the finances and operations of both districts. We disagree.

The circuit court found that the MSID did not substantially comply with section 14-86-2102(a)(2)(C), which requires an improvement district's annual report to contain "[a] list of contracts, the identity of the parties to the contracts, and the obligations of the

13

improvement district[.]" Despite the MSID's carrying out its sole function of paving roads via an open-bid contract with Bookout, the MSID's annual report states "NONE" for contracts. As the circuit court noted, while a $288,150 expenditure for "PAVING" is listed on a separate financial statement, the MSID's annual report does not disclose any information relating to its contract with Bookout.

The circuit court found that the MRID did not substantially comply with section 14-86-2102(a)(2)(C) when it failed to disclose on its annual report the existence of several contracts relating to the improvement district's main operation—a golf course. The court also found that the MRID failed to substantially comply with section 14-86-2102(a)(2)(D), which requires an improvement district's annual report to contain "[a]ny indebtedness . . . and the reason for the indebtedness" and the "payout or maturity date of the indebtedness, if any," which "shall be included." The MRID's report, nevertheless, failed to include the reason for its line of credit with FNBC and the reason for and payout or maturity date for its debt with FNBIC.

We cannot say that the court's findings are clearly erroneous. As the circuit court correctly recognized, the substantial-compliance analysis begins with ascertaining the intent of the legislation at issue and the effect intended by the legislature in passing the code. *Trussell v. Fish*, 202 Ark. 956, 961, 154 S.W.2d 587, 590 (1941). As the court also correctly acknowledged, in enacting the Improvement District Transparency Act, as amended by Act 359 of 2021, the General Assembly intended to "afford taxpayers transparency in the expenditures and business of improvement districts." Such intent is evident from the plain

14

language of the statute. *See* Ark. Code Ann. § 14-86-2102(a)(1)(B) (providing that the annual report "shall be available for inspection and copying by assesses landowners in the improvement district"). Our supreme court has said that "substantial compliance with a statute is not shown unless it is made to appear that the purpose of the statute is shown to have been served." *State v. Eason*, 219 Ark. 36, 42, 240 S.W.2d 36, 40 (1951) (quoting *Kasner v. Stanmire*, 155 P.2d 230, 232 (1944)).

The circuit court correctly found that the districts' incomplete annual reports frustrate the clear purpose of the Improvement District Transparency Act. Here, the information omitted from the annual reports was necessary for taxpayers to fully understand the MRID's and the MSID's operations and finances. Accordingly, the court did not clearly err in finding that the MRID and the MSID failed to substantially comply with the statutory reporting requirements.

In their second point on appeal, appellants argue that DeLair's appointments of McDaniel and Delvecchio as administrators of the MRID and the MSID failed to comply with Arkansas Code Annotated section 14-86-2102(b)(2)(B) because neither administrator provided sufficient proof of his economic viability until after he were appointed. As a threshold matter, appellees contend that this argument is not preserved because appellants failed to obtain a ruling in the circuit court. We disagree. We do, however, agree that appellants' argument is unavailing.

The statute says that an administrator appointed pursuant to subdivision (b)(1) "shall provide evidence of his or her economic viability." Contrary to appellants' argument, the

statute is silent as to when the proof must be provided. The statute does not say that such evidence must be provided before the appointment is made. Appellants, moreover, do not dispute that both McDaniel and Delvecchio provided such evidence after their appointments. Nor do they challenge either appointed administrators' economic viability.

In sum, the statute does not require that evidence of economic viability be provided before appointment. Indeed, it does not provide *any* temporal requirement. When, like here, a statute is unambiguous, the rules of statutory construction do not permit the court to read into it words that are not there. *McMillan*, 2012 Ark. 166, at 6, 401 S.W.3d at 477; *see also Kildow v. Baldwin Piano & Organ*, 333 Ark. 335, 339, 969 S.W.2d 190, 192 (1988) ("We will not add words [to a statute] to convey a meaning that is not there."). The circuit court correctly concluded that DeLair's appointments complied with Arkansas Code Annotated section 14-86-2102(b)(2)(D).

Affirmed.

WOOD and BROWN, JJ., agree.

*Blair & Stroud*, by: *Barrett S. Moore* and *Kaitlin G. Blakely*, for appellants.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *John Alexander* and *Colt D. Galloway*, for appellees.